Patrick A. **KEELAN** and Bonnie Keelan, Plaintiffs–Appellees,

v.

**VAN WATERS & ROGERS, INC.,**
Defendant–Appellant.

No. 90CA0578.

Colorado Court of Appeals,
Div. I.

July 18, 1991.

Rehearing Denied Aug. 15, 1991.

Certiorari Granted Dec. 3, 1991.

---

* Sitting by assignment of the Chief Justice under provisions of the *Colo. Const.* art. VI, § 5(3), and

§ 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

**1146**

Feder, Morris, Tamblyn & Goodstein, P.C., Stephen B. Schuyler, Leonard M. Goldstein, Denver, for plaintiffs-appellees.

Parcel Mauro Hultin & Spaanstra, P.C., Edward W. Stern, James L. Harrison, Denver, for defendant-appellant.

McDermott, Hansen, Anderson & Reilly, William J. Hansen, Denver, for amicus Colorado Trial Lawyers' Ass'n.

Opinion by Judge DUBOFSKY.

Defendant, Van Waters & Rogers, Inc., appeals a judgment entered on a jury verdict awarding plaintiffs, Patrick A. Keelan (Keelan) and Bonnie Keelan, damages for injuries incurred by Keelan when a jack from defendant's truck fell and struck him. Defendant's sole contention on appeal is that the trial court erred in refusing to offset Keelan's disability benefits from the amount awarded. We affirm.

Keelan was employed by the Denver Fire Department, and as a result of the injury here at issue, he was declared occupationally disabled by the Fire and Police Pension Association (FPPA) Board on February 24, 1989. He received statutory disability payments pursuant to a disability and survivor benefit plan instituted by the state for local police officers and fire fighters. *See* § 31–30–1001, et seq., C.R.S. (1986 Repl.Vol. 12B). Those benefits amounted to $16,-996.56 by February 1990. The present value of future disability benefits based on his actuarial life-expectancy is approximately $300,000.

During trial, the jury was not informed of Keelan's right to receive disability benefits. On January 19, 1990, the jury returned a verdict of $421,000 in favor of plaintiffs ($411,000 for Keelan and $10,000 for Bonnie Keelan). The jury allocated $100,000 to Keelan for non-economic loss, $300,000 for economic loss, $6,000 for physical impairment, and $5,000 for head lacerations.

Following the verdict, defendant requested that the trial court reduce the verdict by offsetting the present value of all disability payments. The trial court denied defendant's request and disallowed any offset. Judgment, including interest, for $463,-384.94 was entered in favor of plaintiffs.

## I.

■ Defendant argues that the trial court erred in not requiring a setoff of disability payments from plaintiffs' judgment. We disagree.

Defendant maintains that § 13–21–111.6, C.R.S. (1987 Repl.Vol. 6A) was passed as part of the overall legislative tort reform package and the General Assembly's primary intent in passing such legislation was to limit the increasing costs of insurance. Relying on *People v. Silvola*, 190 Colo. 363, 547 P.2d 1283, *cert. denied sub nom. Silvola v. Colorado*, 429 U.S. 886, 97 S.Ct. 238, 50 L.Ed.2d 167 (1976), defendant contends that, in certain situations, the courts should ignore the literal language of a statute in order to implement the overall legislative intent. Furthermore, defendant argues that the legislative intent here is to prevent double recovery by an injured plaintiff and we should construe the exception set out below so narrowly as to make it inapplicable here.

We disagree with defendant's analysis as it applies to this statute.

Section 13–21–111.6 states:

"In any action by any person ... to recover damages for a tort resulting in death or injury ... the court, after the finder of fact has returned its verdict stating the amount of damages to be awarded, shall reduce the amount of the verdict by the amount by which such person ... has been or will be wholly or partially indemnified or compensated for his loss by any other person, corporation, insurance company, or fund in relation to the injury, damage, or death sustained; except that the verdict shall not be reduced by *the amount by which such person, his estate, or his personal representative has been or will be wholly or partially indemnified or compensated by a benefit paid as a result of a contract entered into and paid for by or on behalf of such person.*" (emphasis added)

■ A statute is to be read in its entirety and effect given to the legislative intent as it is written. A court should not depart from the plain meaning of words in search of a legislative intent which the words of the statute do not plainly and effectively express. *Rancho Colorado, Inc. v. City of Broomfield*, 196 Colo. 444, 586 P.2d 659 (1978); *People v. Howell*, 701 P.2d 131 (Colo.App.1985).

Here, the legislative intent of the statute is clear on its face. The exception expresses the legislative intent not to require a setoff if a benefit is paid as a result of a contract entered into and paid for or on behalf of such person.

Defendant relies on *U.S. Fidelity & Guaranty Co. v. Salida Gas Service Co.*, 793 P.2d 602 (Colo.App.1989) to support its contention that § 13–21–111.6 requires that Keelan's disability benefits be offset from the judgment. *Salida Gas* deals with the propriety of a setoff from the verdict of a previous settlement with another defendant. There, the court determined that § 13–21–111.6 required a setoff. *Salida Gas* is not, however, dispositive because it does not involve the exception to § 13–21–111.6 which is the issue here.

We thus conclude that the statute should be interpreted and applied as written and that the trial court was correct in so doing.

## II.

Defendant next argues that the disability benefits paid to Keelan were provided through a statewide fund created by statute and that, therefore, they were not a result of an employment contract entered into and paid for on his behalf as required by the exemption in § 13–21–111.6. We disagree.

Payments made to injured parties as a gratuity have traditionally not been considered to be derivative from a contractual arrangement and a setoff has been permitted for such gratuitous payments. *City of Englewood v. Bryant*, 100 Colo. 552, 68 P.2d 913 (1937) (gratuitous medical care at county hospital); *Gomez v. Black*, 32 Colo. App. 332, 511 P.2d 531 (1973) (Colorado medicaid benefits).

However, historically, a tortfeasor has been required to compensate an injured

party for economic medical losses even if the party has already been compensated through another source. The courts have concluded that it is better public policy that an injured party be twice compensated than that a wrongdoer be absolved of financial responsibility in such situations. This policy is known as the collateral source rule. *See Kistler v. Halsey,* 173 Colo. 540, 481 P.2d 722 (1971); *Isbill Associates, Inc. v. City & County of Denver,* 666 P.2d 1117 (Colo.App.1983).

At common law, disability payments have been subject to the collateral source rule, and tortfeasors could not setoff these payments from an award of damages. *See Moyer v. Merrick,* 155 Colo. 73, 392 P.2d 653 (1964); *see also Goodboe v. Gabriella,* 663 P.2d 1051 (Colo.App.1983). The virtually unanimous rule has been that a tortfeasor has no right to mitigate the damages awarded to a plaintiff because of disability funds that the plaintiff receives as a result of his injuries. *See* Annot., 75 A.L.R.2d 885 (1961).

This common law rule has been explicitly applied to disability payments made to injured fire fighters. In *Texas Cities Gas Co. v. Dickens,* 156 S.W.2d 1010 (Tex.App. 1941), *aff'd,* 140 Tex. 433, 168 S.W.2d 208 (1943), the court held that payment of a disability pension to a fire fighter pursuant to an ordinance should not reduce the amount of damages owed by the tortfeasor. *Bencich v. Market Street Railway Co.,* 29 Cal.App.2d 641, 85 P.2d 556 (1938); *Accord Mullins v. Bolinger,* 115 Ind.App. 167, 55 N.E.2d 381, 56 N.E.2d 496 (1944).

Here, the evidence establishes that Keelan was a fire fighter with an employment contract with the City of Denver. Under the terms of the contract he received a salary and "fringe benefits." These fringe benefits included disability compensation.

Because of funding difficulties at the local level, the State of Colorado in 1978 assumed responsibility for funding and administering a police and fire fighters' disability program. *See* § 31–30–1001, et seq. Defendant claims that this disability scheme is so separated from Keelan's employment contract with Denver that disability payments do not arise from their contractual arrangement and, therefore, the exemption in § 13–21–111.6 is inapplicable.

 Statutory law which pertains to the terms of a contract is considered part of that contract. *See Colorado Investment Services, Inc. v. City of Westminster,* 636 P.2d 1316 (Colo.App.1981) (law existing at time and place of making of contract with municipality is part of contract). Thus, § 31–30–1001, et seq., insofar as it pertains to Keelan's contract with Denver, is part of that contract. Therefore, we conclude that the state statutory provisions which govern the fire fighters' disability fund are not, as defendant argues, separate from and unrelated to Keelan's contract with Denver.

Rather, we conclude that this statutory scheme is intimately connected with Keelan and Denver's contract and exists so that benefits can be paid because of it. We therefore conclude that the disability payments paid to Keelan arose from his contract with Denver. *See Colorado Investment Services, Inc. v. City of Westminster, supra.*

However, defendant argues that the disability benefits did not result from monetary payments made either by Keelan or his employer (City of Denver) as required by the statutory exception. We disagree for two reasons.

Other courts have concluded that pension plans paid for entirely by an employer are considered as part of an employee's overall compensation. *See Aurora v. Ackman,* 738 P.2d 796 (Colo.App.1987); *Beaulieu v. Elliott,* 434 P.2d 665 (Alaska 1967) (serviceman's disability and retirement pay was a fringe benefit as a result of a contractual relationship wherein he received lower wages for his services); *Kagarise v. Shover,* 218 Pa.Super. 287, 275 A.2d 855 (1971); *see also Hall v. Olague,* 119 Ariz. 73, 579 P.2d 577 (App.1978) (serviceman who had made no direct contribution to the pension fund had constructively paid for the benefits and security incidental to military service). *See* Restatement (Second) of Torts § 928 comment b (1979).

We agree with the reasoning in these cases and, thus, conclude that disability benefits which arise out of a contractual employment relationship are benefits for which the employee has given consideration. Here, the disability benefits were a part of Keelan's total compensation package for which he gave consideration by working as a fire fighter. *See Helfend v. Southern California Rapid Transit District,* 2 Cal.3d 1, 84 Cal.Rptr. 173, 465 P.2d 61 (1970) (employment compensation benefits were paid for by the employee by receiving lower wages). We therefore conclude that Keelan provided consideration for the disability payments and, thus, paid for those benefits as required by the exemption to § 13–21–111.6.

Furthermore, we conclude that the benefits were also paid for by another (the State of Colorado) on Keelan's behalf and that, thus, on this basis also, the exemption in § 13–21–111.6 is applicable to preclude a setoff.

Largely because of the dangerous nature of the work undertaken by police officers and fire fighters, disability pension funds have long been an integral part of the contractual and employment arrangements between police, fire fighters, and their employers. *See Peterson v. Fire & Police Pension Ass'n,* 759 P.2d 720 (Colo.1988). Because of the expense of disability programs, the State of Colorado, on behalf of the local governmental units, has on a temporary basis created and funded this statewide program. *See* § 31–30–1001, et seq.

Section 31–30–1001, C.R.S. (1986 Repl. Vol. 12B) indicates that the creation and maintenance of an adequately funded police and fire fighters' disability pension program is a matter of statewide concern. Certainly, competent, adequately paid (including disability and retirement benefits), and well-trained fire fighters working in local fire departments provide safety and protection to the state's citizens. Payments by the State of Colorado supporting this disability fund were thus provided on behalf of fire fighters like Keelan, and therefore, such payments meet the statu-

tory exemption requirements of § 13–21–111.6.

In summary, we hold that Keelan's disability benefits arose from a contractual relationship between a local governmental unit and himself, that the payments to the fund were made by and on behalf of Keelan, and that, thus, by virtue of § 13–21–111.6, the trial court's refusal of any setoff was correct.

Judgment affirmed.

PIERCE and RULAND, JJ., concur.