**James David MILLER and Magnum Plastics, Inc., Plaintiffs–Appellants,**

v.

**HARTFORD CASUALTY INSURANCE COMPANY, Defendant–Appellee.**

No. 05CA2412.

Colorado Court of Appeals, Div. I.

April 5, 2007.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2006.

Wood, Ris & Hames, P.C., Mark R. Davis, Mark J. Jachimiak, Denver, Colorado, for Plaintiffs–Appellants.

Wells, Anderson & Race LLC, L. Michael Brooks, Jr., Denver, Colorado, for Defendant–Appellee.

Opinion by Judge ROY.

Plaintiffs, James David Miller (driver) and Magnum Plastics, Inc. (employer) (collectively, the insureds), appeal the entry of summary judgment in favor of defendant, Hartford Casualty Insurance Company (Hartford). We affirm.

In May 2002, a vehicle leased to the employer and driven by the driver was involved in an accident with a bicycle, which resulted in the death of the bicyclist (the decedent). At the time of the accident, the employer was insured under a commercial general liability insurance policy issued by Hartford and an automobile policy issued by Progressive Insurance Company.

The record contains only the declaration pages of the Progressive automobile policy. From those declaration pages it appears that (1) the policy provided the coverages required by the lease; (2) the employer was listed as the insured; (3) the vehicle was listed as an insured vehicle; (4) the driver was listed as a driver; and (5) GMAC was listed as the loss payee. The policy did not describe the interests of the employer or GMAC in the vehicle. The driver may have been named as an additional insured on the auto policy, but that is not apparent from the portions of this policy in the record.

The Hartford policy contained an exclusion for bodily injury arising out of the ownership, use, or entrustment to others of any automobile rented or loaned to the insured (the automobile exclusion). It also contained an endorsement partially restoring that coverage, which stated:

A. Under B., Exclusions, 1. Applicable to Business Liability Coverage, [the automo-

bile exclusion], does not apply to any "auto" that is a "non-owned auto".

A "non-owned auto" is an "auto" you do not own including but not limited to:

1. An "auto" that you lease, hire, rent or borrow. . . .

*This does not include a long-term leased "auto" that you insure as an owned "auto" under any other auto liability insurance policy* or a temporary substitute for an "auto" you own that is out of service because of its breakdown, repair, servicing or destruction.

(Emphasis added.)

The decedent's heirs sued the insureds for negligence, and they, in turn, requested that Hartford provide defense and indemnification. Hartford denied coverage and refused to defend or indemnify. The insureds, to limit their exposure, settled with the decedent's heirs after notice to Hartford.

The insureds then filed suit against Hartford, asserting claims for declaratory relief, breach of an insurance contract, and bad faith breach of an insurance contract. Hartford responded, denying coverage based on the exception to the endorsement. Both parties filed motions for summary judgment, and the trial court, in a detailed and well-reasoned order, granted Hartford's motion, concluding it had no duty to defend or indemnify because the leased vehicle involved in the accident was not a covered vehicle. This appeal followed.

Summary judgment is appropriate when the pleadings, affidavits, depositions, or admissions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The fact that a court is presented with cross-motions for summary judgment does not decrease either party's burden of establishing an entitlement to summary judgment. *AviComm, Inc. v. Colo. Pub. Utils. Comm'n,* 955 P.2d 1023, 1029 (Colo.1998). We review a grant of summary judgment de novo. *Vail/Arrowhead, Inc. v. Dist. Court,* 954 P.2d 608, 611 (Colo.1998).

## I.

First, the insureds assert that the trial court erred in concluding that Hartford had no duty to defend. We disagree.

A duty to defend arises when the underlying complaint against an insurer alleges any facts that might fall within the coverage of the policy. *Cyprus Amax Minerals Co. v. Lexington Ins. Co.,* 74 P.3d 294, 300 (Colo.2003); *Compass Ins. Co. v. City of Littleton,* 984 P.2d 606, 613 (Colo.1999). When determining whether a duty to defend exists, a trial court must restrict its examination to the four corners of the complaint. *McGowan v. State Farm Fire & Cas. Co.,* 100 P.3d 521, 523 (Colo.App.2004). There is no duty to defend absent a factual or legal basis on which the insurer might have a duty to indemnify. *Compass Ins. Co. v. City of Littleton, supra,* 984 P.2d at 614. The insurer has the burden of establishing that the claims asserted in the complaint are not covered by the policy because they are "solely and entirely within the exclusions in the insurance policy" and the exclusions "are not subject to any other reasonable interpretations." *Hecla Mining Co. v. New Hampshire Ins. Co.,* 811 P.2d 1083, 1090 (Colo. 1991).

Before analyzing the policy, we will summarize briefly the principles that underlie our analysis. "An insurance policy is a contract which should be interpreted consistently with the well settled principles of contractual interpretation." *Chacon v. Am. Family Mut. Ins. Co.,* 788 P.2d 748, 750 (Colo.1990). We begin by giving words used in an insurance policy their plain and ordinary meaning unless the intent of the parties, as expressed in the policy, indicates that an alternative interpretation is intended. Courts should not rewrite clear and unambiguous contract provisions. *Chacon v. Am. Family Mut. Ins. Co., supra,* 788 P.2d at 750. Dictionaries may be used to assist in the determination of the plain and ordinary meaning of words, and any ambiguities are construed against the insurer. *Hecla Mining Co. v. New Hampshire Ins. Co., supra,* 811 P.2d at 1091; *Chacon v. Am. Family Mut. Ins. Co., supra,* 788 P.2d at 750.

■ Interpretation of an insurance contract, including whether there is an ambiguity, is a matter of law which we review de novo. *Compass Ins. Co. v. City of Littleton, supra,* 984 P.2d at 613; *Prudential Prop. & Cas. Ins. Co. v. LaRose,* 919 P.2d 915, 916 (Colo.App.1996).

Here, as previously discussed, the Hartford policy excludes coverage for "bodily injury ... arising out of the ownership ... [or] use of any ... auto ... owned or operated by or rented or loaned to any insured." It is undisputed that without more Hartford has no duty to defend or indemnify the insureds.

However, there is more. The employer purchased a "non-owned auto endorsement" for which it paid an additional premium and which is quoted above. The endorsement extends coverage to non-owned automobiles, including leased automobiles, but excepts "a long-term leased 'auto' that [the insured] insure[s] as an owned 'auto' under any other auto liability insurance policy." This latter phrase forms the basis for the dispute.

### A.

■ First, the insureds assert that because the policy did not define "long-term," it was reasonable to believe that the vehicle was not a "long-term leased" vehicle. We disagree.

Here, the facts are undisputed that the vehicle was leased by the employer for thirty-six months and the term "long-term lease" is not defined in the policy. "Long-term" has been defined as "[i]n effect, involving, or maturing after a number of years." *American Heritage Dictionary* 469 (4th prtg.1970); *see also Webster's II New College Dictionary* 646 (1995) (defining "long-term" as "[i]nvolving, maturing, or being in effect after a number of years"); cf. Black's Law Dictionary 433 (8th ed.2004) (defining "long-term debt" as "[g]enerally, a debt that will not come due within the next year").

In addition, cases from other jurisdictions support the interpretation that a thirty-six-month vehicle lease is a "long-term" vehicle lease. *See Allianz Ins. Co. v. Otero,* 353 F.Supp.2d 415, 429 (S.D.N.Y.2004) (a thirty-eight-month lease was considered a long-

term vehicle lease); *R.E. Turner, Inc. v. Connecticut Indem. Co.,* 925 F.Supp. 139, 142 (W.D.N.Y.1996) (an insurance policy only covered vehicles that were subject to a valid, long-term lease defined as being not less than thirty consecutive days); *Home Ins. Co. v. Glens Falls Ins. Co.,* 675 S.W.2d 486, 487 (Tenn.Ct.App.1984) (a truck that was leased for three years before it was involved in an accident was considered on a long-term lease).

Therefore, we conclude that the vehicle was leased to employer on a long-term lease within the meaning of the Hartford policy.

### B.

■ Next, the insureds assert that the phrase "insure as an owned 'auto'" is ambiguous because there is more than one reasonable interpretation. We disagree.

Hartford asserts that the word "as" functions as a simile and means "after the manner of: the same as: like." *Webster's Third New International Dictionary* 125 (2002). By contrast, the insureds assert that because the employer had insured the vehicle as a leased vehicle, not as an owned vehicle, it was reasonable to believe that this phrase did not apply to this situation. We note that there is no support in the record for that assertion; however, for our purposes, we will assume it is true. Because a leased vehicle, by definition, is not an owned auto, we agree with Hartford that its interpretation is the only logical definition.

Colorado statutes require, with exceptions not pertinent here, that every owner of a motor vehicle who operates the motor vehicle on Colorado's public highways be insured with specified minimum coverages. Sections 10–4–619, 10–4–620, C.R.S.2006. The statute defines "owner," for the purposes of requiring compulsory liability coverage, to include a lessee with possession of a vehicle and the right to purchase the vehicle at the end of the lease period. Colo. Sess. Laws 1973, ch. 94, § 10–4–703(8) at 335 (now repealed; law at the time of the accident); cf. § 10–4–601(8), C.R.S.2006 (substantially similar definition).

Further, we note that (1) the lease is a "capitalized lease" predicated on the "gross capitalized cost" of the vehicle; (2) there is an option to purchase at the end of the term based on the "adjusted capitalized cost" less calculated depreciation; (3) the lessee is responsible to insure the vehicle with specified limits and deductibles for liability, comprehensive, and property damage coverages; (4) the lessee is responsible for all taxes, fees, inspections, maintenance, repair, and operating expenses; and (5) the lessee fully indemnifies the lessor for all losses, damages, injuries, claims, demands, and expenses arising out of the condition, maintenance, use, and operation of the vehicle. While these terms probably would not convert the lease into a security agreement under the Uniform Commercial Code, there is not much difference between the lease and ownership of the vehicle. *See* § 4-1-203, C.R.S.2006; *H.M.O. Sys., Inc. v. Choicecare Health Servs., Inc.*, 665 P.2d 635, 638 (Colo.App.1983).

Further, the insureds state that the employer procured an automobile policy to comply with the provisions of the Lease Agreement and Colorado law. Because the vehicle was insured in the same manner as an owned vehicle, we conclude it was "insure[d] as an owned 'auto'" under the terms of the Hartford policy.

Therefore, we conclude that Hartford had no duty to defend the insureds.

## II.

Next, the insureds assert that the trial court erred in finding that the claims against them did not trigger the obligation to indemnify under the terms of the policy. We disagree.

The duty to defend is broader than the duty to indemnify. Therefore, where, as here, a duty to defend does not exist, there cannot be a duty to indemnify. *Cyprus Amax Minerals Co. v. Lexington Ins. Co., supra*, 74 P.3d at 299–300; *Compass Ins. Co. v. City of Littleton, supra*, 984 P.2d at 609. Here, because we have already determined that Hartford had no duty to defend, it also had no duty to indemnify.

## III.

The insureds assert that the trial court erred by granting Hartford's motion for summary judgment on the remaining claims of bad faith breach of an insurance contract and breach of contract. We disagree.

The pleadings reveal that these claims were based on Hartford's refusal to defend and indemnify. Because we have determined that Hartford had no duty to defend or indemnify, summary judgment was properly entered on these claims in favor of Hartford. *See Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 342 (Colo.2004); *Tynan's Nissan, Inc. v. Am. Hardware Mut. Ins. Co.*, 917 P.2d 321, 326 (Colo.App.1995).

The judgment is affirmed.

Judge MÁRQUEZ and Judge FURMAN concur.