2017 COA 6

**Neill SMITH and Bliss Bishop, Plaintiffs-Appellants,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Defendant-Appellee.**

**Court of Appeals No. 15CA2037**

Colorado Court of Appeals, Div. I.

Announced January 12, 2017

---

Franklin D. Azar & Associates, William C. Marlin, Peter J. McCaffrey, Aurora, Colorado, for Plaintiffs-Appellants

Patterson & Salg, P.C., Franklin D. Patterson, Karl S. Chambers, Greenwood Village, Colorado, for Defendant-Appellee

Opinion by JUDGE DUNN

¶ 1 Neill Smith suffered serious injuries when he was skewered by hay spears attached to a farm tractor driven by Robert Bunker. The district court dismissed the complaint he and his wife, Bliss Bishop, filed against State Farm Mutual Automobile Insurance Company, concluding that the tractor was not a covered motor vehicle under their State Farm insurance policy.[1] Mr. Smith now asks us to undo that ruling. The question before us then is whether State Farm's underinsured motorist (UIM) provision provides coverage to Mr. Smith for bodily injury sustained in an automobile accident with a farm tractor. We conclude that it does, and so we reverse the judgment dismissing the complaint and remand the case for further proceedings.

## I. Background

¶ 2 It happened on a county road in Moffat, Colorado. Mr. Bunker was driving a John Deere tractor (the tractor) when he collided with Mr. Smith's truck. The hay spears attached to the tractor pierced the truck and impaled Mr. Smith, leaving him seriously injured. Mr. Bunker later pleaded guilty to careless driving. Mr. Smith settled his claim against Mr. Bunker for Mr. Bunker's liability policy limits. This amount, however, did not fully compensate Mr. Smith for his injuries, according to Mr. Smith.

¶ 3 But Mr. Smith had UIM coverage with State Farm. So, he filed a claim with State Farm for UIM benefits. Taking the position that a farm tractor is not a motor vehicle, State Farm denied coverage.

¶ 4 Unsurprisingly, Mr. Smith sued State Farm, asserting claims for breach of contract, bad faith breach of an insurance contract, and improper denial of an insurance claim. State Farm moved the court to determine as a matter of law that the tractor is not a motor vehicle under the policy's UIM coverage provision. The court granted the motion, finding that the tractor "is not a covered motor vehicle for purposes of ... [the] UIM coverage policy." It then dismissed the complaint.

## II. Standard of Review and Principles of Interpretation

¶ 5 We review de novo a district court's order determining a question of law under C.R.C.P. 56(h). *Patterson v. BP Am. Prod. Co.*, 2015 COA 28, ¶ 20, 360 P.3d 211. The interpretation of an insurance policy is also reviewed de novo. *Grippin v. State Farm Mut. Auto. Ins. Co.*, 2016 COA 127, ¶ 9, —— P.3d ——.

¶ 6 An insurance policy is a contract, and it is interpreted like any contract. *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002). This means it is our job to determine and give effect to the parties' intent, "and, when possible, the parties' intent should be determined by the language of the policy alone." *Mt. Hawley Ins. Co. v. Casson Duncan Constr., Inc.*, 2016 COA 164, ¶ 12, —— P.3d ——.

¶ 7 Unless defined, we give a policy's words their plain meaning and construe the terms "as they would be understood by a person of ordinary intelligence." *State Farm Mut. Auto. Ins. Co. v. Nissen*, 851 P.2d 165, 167 (Colo. 1993); *see also Huizar*, 52 P.3d at 819. We will enforce the policy as written, unless there is an ambiguity in the policy language. *State Farm Mut. Auto. Ins. Co. v. Stein*, 940 P.2d 384, 387 (Colo. 1997). A term in an insurance policy is ambiguous if, on its face, it is susceptible of more than one reasonable interpretation. *Am. Family Mut. Ins. Co. v. Hansen*, 2016 CO 46, ¶ 24, 375 P.3d 115. If such an ambiguity exists, we interpret the policy in favor of the insured and against the insurance company. *Stein*, 940 P.2d at 390; *Mt. Hawley*, ¶ 13.

---

1. It appears from the record that Mr. Smith and Ms. Bishop had two identical State Farm insurance policies. For simplicity's sake, we refer to just one policy and to just Mr. Smith.

### III. Discussion

¶ 8 Mr. Smith disagrees with the district court's conclusion that the tractor is not a covered "motor vehicle" under his policy's UIM coverage provision. Specifically, he argues that (1) the definition of "uninsured motor vehicle" within the policy applies to the tractor; (2) the ordinary meaning of "motor vehicle" includes the tractor; and (3) State Farm is statutorily required to provide UIM coverage for injuries caused by the tractor, and the public policy behind this statute supports coverage. We address each contention in turn.

### A. The Insurance Policy

¶ 9 The policy begins with a general "definitions" section that defines certain words and phrases "for use throughout the policy." And it instructs that "[e]ach coverage includes additional definitions only for use with that coverage." The policy explains that defined terms "are printed in boldface italics."

¶ 10 After the definitions, the policy describes seven different types of coverage. The coverage provision in question here— "Uninsured Motor Vehicle Coverage"—deals with situations where the insured is injured in an accident with an uninsured or underinsured driver. It states:

> [State Farm] will pay compensatory damages for ***bodily injury*** an ***insured*** is legally entitled to collect from the owner or driver of an uninsured motor vehicle or an underinsured motor vehicle. The ***bodily injury*** must be:
>
> a. sustained by an ***insured***; and
>
> b. caused by an accident that involves the operation, maintenance, or use of either an uninsured motor vehicle or an underinsured motor vehicle as a motor vehicle.

¶ 11 Although State Farm promises coverage for the "operation, maintenance, or use" of an uninsured or underinsured "motor vehicle," neither the UIM coverage provision nor the general definitions section defines the term "motor vehicle." Thus, on its face, the

UIM coverage provision neither includes nor excludes the tractor from coverage.

¶ 12 Given this, Mr. Smith urges us to consider the definition of "uninsured motor vehicle" in a separate policy provision, which provides for "Uninsured Motor Vehicle Property Damage Coverage" (property damage coverage).[2] In his view, the definition in this separate coverage provision includes the tractor. And he argues that because contracts must be construed as a whole, the "only reasonable interpretation" of the policy is to import the property damage coverage's "uninsured motor vehicle" definition into the UIM coverage provision.

¶ 13 But even assuming the "uninsured motor vehicle" definition in the property damage coverage provision extends to the tractor—an issue we do not reach—we do not agree with Mr. Smith that the parties intended to incorporate that definition into the UIM coverage provision. To do so would require us to ignore the policy's unambiguous instruction that additional definitions within each coverage provision are "only for use with that coverage." Following this plain direction, we will not extend the "uninsured motor vehicle" definition found only in the property damage coverage provision beyond that provision. *See Huizar*, 52 P.3d at 819 ("When a contract is organized into separate parts, a provision or definition found in one part or section of the contract is not necessarily intended to apply to other parts."); *accord Cont'l W. Ins. Co. v. Heritage Estates Mut. Hous. Ass'n, Inc.*, 77 P.3d 911, 913 (Colo. App. 2003) (declining to extend attorney fee provision in the liability portion of the insurance policy to the policy's property coverage portion).

¶ 14 The policy's use of distinct typeface in different coverage provisions further reassures us that the "uninsured motor vehicle" definition is limited to the property damage coverage provision. The policy explains that defined terms are signified by "boldface italics." And in the property damage coverage provision, the defined term "uninsured motor vehicle" is written in boldface italics.

2. This coverage applies not to bodily injury, but to property damage caused by an accident with an uninsured motor vehicle.

In contrast, the term is in plain typeface in the UIM coverage provision. This different typeface is further evidence that the "uninsured motor vehicle" definition is meant to apply to just the property damage coverage provision. *See Stein*, 940 P.2d at 388 (highlighting the typeface of a word in one section of an insurance policy, but not in another section, indicated the parties' intent to apply a different meaning).

¶ 15 For these reasons, we reject Mr. Smith's contention that the property damage coverage's definition of "uninsured motor vehicle" is included in the UIM coverage provision.

### B. Plain Meaning

¶ 16 Having established that the UIM coverage provision says nothing about whether the tractor is a covered motor vehicle, the question remains whether Mr. Smith is entitled to UIM coverage. We therefore consider his contention that the plain and ordinary meaning of motor vehicle includes the tractor.

¶ 17 We are not the first to be asked to define the term "motor vehicle." Faced with this same question for purposes of the Colorado Governmental Immunity Act, our supreme court turned to the dictionary. *Bertrand v. Bd. of Cty. Comm'rs*, 872 P.2d 223, 229 (Colo. 1994) (adopting definition of motor vehicle in *Webster's New World Dictionary of the American Language* 930 (2d college ed. 1974)), *superseded by statute*, Ch. 262, sec. 1, § 24-10-103(2.7), 2007 Colo. Sess. Laws 1025. Although the General Assembly later redefined the term for purposes of the Colorado Governmental Immunity Act, *see* Ch. 262, sec. 1, § 24-10-103(2.7), 2007 Colo. Sess. Laws 1025, we agree with *Bertrand* that "motor vehicle" is a term of "ordinary and common usage." *Bertrand*, 872 P.2d at 228. And we agree a proper place to look for the plain meaning of such a common term is the dictionary. *See Miller v. Hartford Cas. Ins. Co.*, 160 P.3d 408, 410 (Colo. App. 2007) (In interpreting the language of an insurance policy, "[d]ictionaries may be used to assist in the determination of the plain and ordinary meaning of words . . . .").

¶ 18 Following *Bertrand*'s path, we conclude that for purposes of the UIM coverage provision, a "motor vehicle" is "[a]n automotive vehicle not operated on rails; [especially]: one with rubber tires for use on highways." *Webster's Third New Int'l Dictionary* 1476 (2002); *see also Bertrand*, 872 P.2d at 229 ("[M]otor vehicle" is any "vehicle on wheels, having its own motor and not running on rails or tracks, for use on streets or highways." (quoting *Webster's New World Dictionary of the American Language* at 930)).

¶ 19 Applying this definition, we conclude the tractor is a "motor vehicle" under the UIM coverage provision. It is undisputed that the tractor had wheels, its own motor, and was not operated on rails. And the tractor's operator's manual, submitted to the district court, confirms that the tractor is for use on streets and highways.[3] Indeed, the manual contains an entire section on highway driving, including a discussion on the use of the tractor's warning lights, turn signals, headlights (both high and low beams), and taillights. The manual also describes the tractor's speed-tracking capabilities. Thus, the tractor's design and function support the conclusion that the tractor is a motor vehicle within that term's common meaning. *See Williams v. State Dep't of Highways*, 879 P.2d 490, 491 (Colo. App. 1994) (applying dictionary definition to conclude that a dump truck with an attached snowplow blade operated on a public road was a motor vehicle under the Colorado Governmental Immunity Act), *superseded by statute*, Ch. 262, sec. 1, § 24-10-103(2.7), 2007 Colo. Sess. Laws 1025, *as stated in Roper v. Carneal*, 2015 COA 13, —— P.3d ——; *cf. Bertrand*, 872 P.2d at 229 (reversing the trial court's determination that a road grader operated on a highway was not a motor vehicle and remanding the case with directions to apply the plain and ordinary meaning of the term).

---

3. State Farm acknowledges that Mr. Bunker was in fact driving the tractor on a county road when he collided with Mr. Smith.

¶ 20 In spite of this, State Farm argues that the plain meaning of motor vehicle requires that the vehicle be "primarily" used for driving on streets or highways. It further contends that the UIM statute supports this definition of motor vehicle and should be read into Mr. Smith's UIM coverage provision. It follows, State Farm contends, that because a tractor is designed primarily for off-road activities, it cannot be a covered motor vehicle.

¶ 21 While we agree that a farm tractor is not primarily used for street driving, the dictionary definition of motor vehicle is not limited to a vehicle's "primary" use. *See Webster's Third New Int'l Dictionary* at 1476; *see generally Bertrand*, 872 P.2d at 229. After all, that a vehicle is primarily designed for off-road use does not mean that it cannot also be used on public roads. The two uses are not mutually exclusive. The plain meaning therefore does not support limiting the policy definition to vehicles "primarily" designed for driving on streets or highways.

¶ 22 We are equally unmoved by State Farm's related attempt to inject the UIM statute's motor vehicle definition into the policy provision. Under this statute, a motor vehicle is "any self-propelled vehicle that is designed primarily for travel on the public highways and that is generally and commonly used to transport persons and property over the public highways." § 42-1-102(58), C.R.S. 2016; *see* § 10-4-601(6), C.R.S. 2016 (UIM statute defines "motor vehicle" as stated in section 42-1-102). To support its contention that this definition must apply to the policy, State Farm points to *Keelan v. Van Waters & Rogers, Inc.*, 820 P.2d 1145 (Colo. App. 1991), *aff'd*, 840 P.2d 1070 (Colo.1992). True, *Keelan* acknowledged that "[s]tatutory law which pertains to the terms of a contract is considered part of that contract." *Id.* at 1148. But *Keelan* is a different case. There, a firefighter was awarded damages for injuries caused by the defendant. *Id.* at 1146. The court considered whether the firefighter's statutory disability payments were a benefit paid as a result of a contract, which would then not require a setoff to the damages award. *Id.* at 1148. The court found that the firefighter's employment contract provided

disability benefits and, because the statutory scheme for disability payments was intimately connected to the employment contract, the court concluded that the employment contract incorporated the state's statutory responsibility to fund and administer the firefighter's disability benefits. *Id.*

¶ 23 *Keelan* therefore is not helpful. Unlike the issue presented here, *Keelen* did not require defining an undefined contractual term. And it did not hold that the plain meaning of a term should be determined from a statute, or even that an ambiguous contract term should be defined by using a statutory definition. For this reason, while courts may consider a statute in construing the legal effect of a contract, they are not required to look to statutes to interpret the meaning of a contract's words, absent the parties' intent to incorporate a statutory definition. *E.g.*, 11 Richard A. Lord, *Williston on Contracts* § 30:19 (4th ed. 2002) ("[T]he principle that parties are presumed to contract with reference to existing law is generally applied in connection with contract 'construction' (determining the legal effect of a contract) rather than contract 'interpretation' (determining the meaning of words used in a contract)."); *see also Rios v. Jennie–O Turkey Store, Inc.*, 793 N.W.2d 309, 316–17 (Minn. Ct. App. 2011) (rejecting request to import statutory definition of "hours worked" into the parties' oral employment agreement). Thus, absent evidence that Mr. Smith's insurance policy incorporated the statutory definition of "motor vehicle," we look to the plain meaning of the term. We have found that in the dictionary.

¶ 24 In any event, because the policy did not incorporate the statutory definition of "motor vehicle," we would be hard pressed to conclude Mr. Smith knew—much less intended—that the statutory definition was part of his policy. *See Stein*, 940 P.2d at 390 ("It would defy common experience as well as our precedent to require an insured to have working familiarity with the [Colorado statutes] in order to be able to understand the definition of a term used in the Policy....").

¶ 25 And even assuming State Farm's narrower definition of motor vehicle is reasonable, it simply renders the policy's unde-

fined term susceptible of more than one meaning, making it ambiguous. *See id.* (explaining that an ambiguity exists where the term is reasonably susceptible of two interpretations). In that event, we would construe such an ambiguity in favor of coverage. *See id.; Mt. Hawley,* ¶ 13.

¶ 26 Finally, State Farm directs our attention to out-of-state cases concluding that a farm tractor is not a motor vehicle. *See, e.g., Kastning v. State Farm Ins. Cos.,* 821 N.W.2d 621, 628 (Minn. Ct. App. 2012). Mr. Smith similarly points to out-of-state authority concluding the opposite. *See, e.g., Hinton v. Interstate Guar. Ins. Co.,* 267 Ga. 516, 480 S.E.2d 842, 845 (1997). Because these cases turn on the unique facts, policies, and statutes presented, none of them adds much to the resolution of our issue.

¶ 27 In short, State Farm did not define the term motor vehicle in Mr. Smith's UIM coverage provision. Nor did it incorporate the statutory definition of motor vehicle into that policy provision. Applying the common definition of motor vehicle, we conclude that the tractor is a covered motor vehicle under Mr. Smith's UIM coverage provision. We therefore reverse the district court's order holding otherwise.

## C. The UIM Statute and Public Policy

¶ 28 In light of our conclusion that the tractor is covered under the policy's UIM coverage provision, we do not consider Mr. Smith's alternative argument that Colorado's UIM statute requires coverage for the tractor. *Cf. Stein,* 940 P.2d at 389 (acknowledging that the insurance statutes provide the minimum statutory requirements for coverage). We also need not consider Mr. Smith's contention that the public policy behind the UIM laws requires that the tractor be covered under the UIM coverage provision.

## IV. Motion to Strike

¶ 29 State Farm requests us to strike portions of Mr. Smith's reply brief that it contends contain facts outside the record. To varying degrees, each party has made statements that lack record support. We therefore decline to strike portions of the reply brief. Instead, we have disregarded those statements that are without record support. *See Pastrana v. Hudock,* 140 P.3d 188, 189 (Colo. App. 2006).

## V. Conclusion

¶ 30 The judgment is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.

JUDGE TAUBMAN and JUDGE ASHBY concur.