25CA0078 Lowery v ICAO 09-18-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0078
Industrial Claim Appeals Office of the State of Colorado
DD No. 24300-2024

---

Angel Lowery,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado and Dillon Companies, Inc.,

Respondents.

---

ORDER AFFIRMED

Division A
Opinion by JUDGE HAWTHORNE*
Román, C.J., and Martinez*, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 18, 2025

---

Ira Sanders, Golden, Colorado, for Petitioner

No Appearance for Respondent Industrial Claim Appeals Office of the State of Colorado

Cozen O'Connor, Jacob M. Rubinstein, Boulder, Colorado, for Respondent Dillon Companies, Inc.


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1	Angel Lowery appeals the denial of her application for unemployment benefits.[1]  We affirm.

## I.	Background

¶ 2	Lowery worked as a pharmacy technician at King Soopers for over a year before King Soopers terminated her employment. Shortly thereafter, a deputy for the Division of Unemployment Insurance (Division) approved her application for unemployment benefits.

¶ 3	King Soopers appealed the deputy's decision to the Division, which then held an evidentiary hearing.  The hearing officer found that King Soopers discharged Lowery for violating the company's

---

[1] Though Lowery's counsel certified his compliance with C.A.R. 28, his brief lacks fundamental components that Rule 28 plainly requires, including (1) a table of contents; (2) a table of authorities; (3) a concise statement identifying the nature of the case; and (4) a summary of the arguments.  "The appellate rules are not mere technicalities but rather are designed to facilitate appellate review," and, thereby, the administration of justice.  *People v. Durapau*, 280 P.3d 42, 50 (Colo. App. 2011); *O'Quinn v. Baca*, 250 P.3d 629, 631 (Colo. App. 2010).  Counsel's deficient brief is subject to being stricken.  *See Castillo v. Koppes-Conway*, 148 P.3d 289, 291 (Colo. App. 2006) (division refused to consider noncompliant brief). However, for judicial economy, we consider the noncompliant brief and caution counsel to comply with this court's appellate rules. *Valentine v. Mountain States Mutual Casualty Co.*, 252 P.3d 1182, 1186 (Colo. App. 2011).

loyalty card program terms.  He also concluded that Lowery was at fault for her job termination and that she was disqualified under section 8-73-108(5)(e)(XX), C.R.S. 2025, from receiving benefits (failure to meet established job performance or other defined standards).  The Industrial Claim Appeals Office (Panel) affirmed the hearing officer's factual findings and legal conclusions.

## II.    Discussion

¶ 4    Lowery argues the Panel (and, before it, the hearing officer) erred in assessing the evidence, making factual findings, and applying the law.  We disagree.

### A.    Standard of Review and Guiding Legal Principles

#### 1.    Standard of Review

¶ 5    We defer to the Panel's factual findings to the extent substantial record evidence supports them.  § 8-74-107(4), C.R.S. 2025.  Substantial evidence is "probative, credible, and competent, of a character which would warrant a reasonable belief in the existence of facts supporting a particular finding, without regard to the existence of contradictory testimony or contrary inferences." *Rathburn v. Indus. Comm'n*, 566 P.2d 372, 373 (Colo. App. 1977). We decide as a matter of law whether substantial evidence exists.

*Pub. Serv. Co. of Colo. v. Pub. Util. Comm'n*, 26 P.3d 1198, 1205 (Colo. 2001).

¶ 6 We may only set aside the Panel's decision if (1) the Panel acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the factual findings do not support the decision; or (4) the decision is erroneous as a matter of law. § 8-74-107(6). We review de novo the Panel's legal conclusions. *M&A Acquisition Corp. v. Indus. Claim Appeals Off.*, 2019 COA 173, ¶ 11.

## 2. Disqualification

¶ 7 Section 8-73-108(5)(e), provides that a claimant shall be disqualified from receiving benefits if their employment separation occurred for "any" of several specifically enumerated reasons. *See M&A Acquisition Corp.*, ¶ 21. To determine what caused a claimant's job separation, the hearing officer considers the totality of the evidence. *Eckart v. Indus. Claim Appeals Off.*, 775 P.2d 97, 99 (Colo. App. 1989).

¶ 8 Section 8-73-108(5)(e)'s disqualification provisions "must be read in the light of the express legislative intent . . . to provide benefits to those who become unemployed through 'no fault' of their

own." *Cole v. Indus. Claim Appeals Off.*, 964 P.2d 617, 618 (Colo. App. 1998); *see* § 8-73-108(1)(a). Thus, even if the hearing officer's findings may support a disqualification under that section, a claimant may still be entitled to benefits if the totality of the circumstances establishes that their job separation occurred through no fault of their own. *Cole*, 964 P.2d at 618. In this context, "fault" requires a volitional act or "the exercise of some control or choice by the claimant in the circumstances resulting in the separation such that the claimant can be said to be responsible for the separation." *Id.*

## B.    Factual Findings

¶ 9      It is undisputed that King Soopers operates an incentive program for shoppers. Specifically, shoppers receive "fuel points" for every purchase they make at King Soopers, allowing them discounts at King Soopers gas stations. When purchasing products at King Soopers, shoppers scan their "loyalty cards" (or enter their loyalty card number manually), and the fuel points earned in connection with the purchase are recorded on the loyalty card account.

¶ 10　　The hearing officer found that King Soopers employees "are prohibited from using their own loyalty card[s] to obtain points fraudulently for purchases made by customers." He further found that, though Lowery acknowledged receiving a written copy of this policy, "during [Lowery's] employment[,] she used her own loyalty card for customer purchases a total of five times." And he found that, "[o]n these occasions[,] customers offered [Lowery] their fuel points[,] which required her to use her card on their purchases." Ultimately, the hearing officer concluded that King Soopers "discharged [Lowery] for violation of the loyalty card program when she used her loyalty card on customer purchases."[2] The hearing officer also found that Lowery was at fault for her job separation because she was aware of the policy and acted voluntarily in

_____

[2] To the extent Lowery urges us to interpret the preceding two sentences as an incorrect finding that Lowery used her loyalty card to purchase customers' products for them, we reject that interpretation. No evidence in the record suggests loyalty cards operate as currency. Rather, we read these sentences as finding that Lowery used her loyalty card to record points on her account that were earned via customers' purchases. We also reject Lowery's argument that *Gonzales v. Industrial Commission*, 740 P.2d 999 (Colo. 1987) commands a different result. That argument presumes the hearing officer (and Panel) found that Lowery used her card to purchase customers' products for them.

violating it. Substantial evidence in the record supports these findings.

¶ 11 Lowery testified that she received a copy of the employee handbook. She also signed a document, entered into evidence, acknowledging that she (1) received the handbook, (2) understood that she was responsible for reading and understanding it, (3) understood her responsibility to comply with the policies therein, and (4) understood that failure to comply with those policies could result in employment termination.

¶ 12 The King Soopers employee handbook, admitted into evidence at the hearing, expressly states that employees "are prohibited from using their Loyalty Card to obtain Loyalty Card . . . points, or other rewards, for purchases for customers." During the hearing, Lowery testified that a customer asked if she wanted loyalty points earned from their purchases, and that she took them up on their offer; she had the loyalty points corresponding with the customer's purchases recorded on her loyalty card account.

¶ 13 At the hearing, King Soopers presented testimony from Deborah Anderson, the assistant store manager and human resources director for the store where Lowery worked. Anderson

6

testified that Lowery was terminated for violating the loyalty card policy.

¶ 14    Lowery argues that the hearing officer (and then the Panel) mischaracterized and misconstrued the evidence underlying the findings.  She further contends that the hearing officer erred in admitting certain evidence and declining her request to take judicial notice of a statute — and that the Panel thus erred in affirming the order.  None of Lowery's arguments provide a basis for setting aside the Panel's order.

### 1.    Misstatement of Gift Policy

¶ 15    Lowery points out that the hearing officer misstated one provision in the King Soopers employee handbook, but we disagree that this error was dispositive.  True, at one point, the hearing officer stated that King Soopers forbids employees from accepting "gifts or accommodations of nominal value," though the handbook actually precludes accepting anything of "*more than* nominal value." (emphasis added.)  This error was harmless.  The gifts policy, correctly stated, does not obviate the policy forbidding employees from using their loyalty cards to record points generated by customers' purchases.  That Lowery may not have violated the gifts

policy does not require reversing her disqualification for violating the loyalty card policy.

## 2. Fraud

¶ 16    Next, Lowery argues that the loyalty card policy only forbids employees from capturing customers' loyalty points when they do so with fraudulent intent, as defined by several authorities, including Colorado common law, the Illinois administrative code, and the Colorado Office of the State Auditor. She then argues that no evidence supports a finding that she intended to defraud customers under the authorities' definitions. We reject this argument.

¶ 17    As Lowery observes, the hearing officer found (and the Panel reiterated) that King Soopers forbids employees "from using their own loyalty cards to obtain points *fraudulently* for purchases made

¶ 18    by customers." (emphasis in briefing.) We also note that this finding echoes language in the employee handbook, stating, "Associates are prohibited from using their personal loyalty card, or loyalty card number, to obtain rewards, points, . . . or benefits fraudulently for purchases by customers."

¶ 19    The interpretation of a written document, like the loyalty card policy, presents a legal question subject to de novo appellate review.

8

*GMAC Mortg. Corp. v. PWI Grp.*, 155 P.3d 556, 557 (Colo. App. 2006). As with any written document, we construe it according to its terms' plain and ordinary meaning. *USI Props. E., Inc. v. Simpson*, 938 P.2d 168, 173 (Colo. 1997). We will not interpret words and phrases in isolation, but, instead, interpret the policy as a whole, seeking to give harmonious effect to all its words and phrases. *Gagne v. Gagne*, 2014 COA 127, ¶ 53.

¶ 20 Because "fraud" is a commonly used word, and people of ordinary intelligence need not guess at its meaning, we may reference a generally familiar dictionary for its definition. *Smith v. State Farm Mut. Auto. Ins. Co.*, 2017 COA 6, ¶ 17; *see also Roalstad v. City of Lafayette*, 2015 COA 146, ¶ 34 (interpreting a commonly used term in a statute). Merriam-Webster's online dictionary defines "fraud" as "an act of deceiving or misrepresenting." https://perma.cc/PJ9N-F8UG. We need not, and do not, look to legal authorities or particular agencies for further guidance.

¶ 21 We apply this definition and read the provision to give effect to neighboring provisions in the same policy, stating, "[Employees] are welcome to obtain and enjoy the benefits of [King Soopers's] Loyalty Cards for their own personal purchases." Further, "[Employees']

use of the [King Soopers] Loyalty Cards is limited to their own purchases, or those of their immediate family (spouse/children)."

¶ 22     Applying the foregoing definition and construing it in the context of the policy as a whole, King Soopers plainly forbids employees from misrepresenting to the company that they — through their own purchases or immediate family members' purchases — earned loyalty points, when, in fact, those loyalty points correspond with customers' purchases.  As the hearing officer found, Lowery signed a statement acknowledging her responsibility to comply with King Soopers' policies, including the loyalty card policy.  By recording points earned via customers' purchases onto her loyalty card account, as the hearing officer found she did, Lowery effectively misrepresented to King Soopers that she had earned those points.

¶ 23     While we agree with Lowery that no evidence suggests she intended to defraud customers, she fails to explain how this affects our disposition, and we perceive no reason why it would.

### 3.    Hearsay

¶ 24     Lowery next argues that the hearing officer erred in admitting, and then "relying on," hearsay.  Lowery makes multiple arguments

involving Anderson's testimony, so we provide context to facilitate the discussion.

¶ 25    It is undisputed that Anderson testified that King Soopers' "asset protection department" investigated Lowery's use of her loyalty card "through" an internal "system" or "team" called "MACS."[3]  She indicated that MACS collected data on Lowery's loyalty card use and prompted the asset protection department to interview Lowery regarding the same.  Senior Asset Protection Specialist, Dillon Skaggs, conducted the interview, and Anderson attended as a witness.  Throughout her hearing testimony, Anderson referenced an email Skaggs authored, summarizing the interview.

¶ 26    Lowery appears to argue that the hearing officer erred in admitting the Skaggs email into evidence because it constituted hearsay since Skaggs "was not present in the hearing and did not testify."  We disagree.

---

[3] The hearing transcript uses this spelling.  Another King Soopers employee refers to the entity as "MAX" elsewhere in the record.  **(F. p. 97)**  Lacking further guidance on the correct name, we adopt the transcript's spelling.

¶ 27   The email would have constituted hearsay, regardless of whether Skaggs was present or testified at the hearing. CRE 801(c); *see Nat'l Can. Corp. v. Dikeou*, 868 P.2d 1131, 1138 (Colo. App. 1993) (reports prepared out of court constitute hearsay). But more importantly, Lowery's counsel *expressly acquiesced* to admitting the email into evidence. The hearing officer began the proceedings by identifying the exhibits each party and the Division had provided. The Skaggs email was included in the Division's omnibus exhibit. Lowery's counsel acknowledged having received that exhibit. When directly asked whether he objected to admitting the exhibit, counsel responded "I do not."

¶ 28   Finally, Lowery fails to identify any harm she suffered from the Skaggs email. Even if admitting the email constituted error, we do not reverse, absent any argument or showing that such error affected Lowery's substantial rights. C.A.R. 35(c) ("The court may disregard any error or defect not affecting the substantial rights of the parties.").

¶ 29   Lowery also argues that the hearing officer and then the Panel, relied on an alleged report from MACS, which was not admitted, in finding that King Soopers "became aware [Lowery] was using her

12

card on customer purchases through a third-party internal investigation."  Citing *Industrial Claim Appeals Office v. Flower Stop Marketing Corp.*, 782 P.2d 13 (Colo. 1989), she argues that the hearing officer (and, subsequently, the Panel) erred in failing to consider "the reliability of this information that their finding of fact was based on."

¶ 30    According to Lowery, during the hearing, Anderson referred to this alleged report, but our record review shows that Anderson never testified that MACS had generated a report.  And the transcript page Lowery cites for this proposition shows no such testimony.  Moreover, under section 8-73-108(5)(e), it is irrelevant how King Soopers discovered Lowery's transgression.  Also, as noted above, Lowery testified at the hearing that she had recorded on her loyalty card account points corresponding with customers' purchases.

### 4.    Administrative/Judicial Notice

¶ 31    Finally, Lowery argues that the hearing officer erred in declining to take administrative — or judicial — notice of section

18-5-101, C.R.S. 2025.[4]  As to taking administrative notice of the statute, we reject that argument because such notice is available only through the Colorado Administrative Procedures Act, which does not apply in the context of unemployment benefits hearings. § 24-4-105(8), C.R.S. 2025 (an agency "may take notice of general, technical, or scientific facts within its knowledge"); § 8-74-106 ("The provisions of the 'State Administrative Procedure Act', article 4 of title 24, C.R.S., and particularly section[] 24-4-105 . . . shall not apply to hearings and court review under this article.").

¶ 32     We are also unpersuaded that the hearing officer should have taken judicial notice of the statute.  Rule 201 requires that tribunals take judicial notice of "adjudicative facts . . . not subject to reasonable dispute" upon request.  CRE 201(a), (b), (d). Adjudicative facts are "the facts of the particular case, as distinguished from, among others, facts with relevance to legal reasoning and the lawmaking process."  *Doyle v. People*, 2015 CO 10, ¶ 9; *see also People in Interest of I.S.*, 2017 COA 155, ¶ 8 ("By

---

[4] It is unclear which of these concepts Lowery intends to invoke.  In the hearing, her counsel requested administrative notice.  In briefing to this court, counsel seemingly conflates administrative and judicial notice.  We address both.

noticing the People's appendix and the district court's finding in it, we recognize the procedural effect of that finding on this appeal, not any material adjudicative effect it might have on the case's merits.").

¶ 33     As a threshold matter, because the Rules of Evidence are "relaxed" in unemployment benefits proceedings, Lowery's argument that Rule 201(d) compelled judicial notice fails. *Richardson v. Indus. Comm'n*, 701 P.2d 166, 167 (Colo. App. 1985). Nor do we conclude that the hearing officer erred in declining to take the requested notice.

¶ 34     At the hearing, Lowery's counsel explained that he specifically requested that the hearing officer take notice "that an individual in order to commit fraud has to knowingly make a false representation of an important fact or event."  From this statement, it appears that Lowery intended to offer section 18-5-101 to inform the hearing officer's interpretation of the written policy precluding employees from "fraudulently" recording customers' loyalty points on their own cards.  This proposition fails for several reasons.

¶ 35     First, section 18-5-101 does not include any iteration of the term "fraud."  § 18-5-101 (setting forth definitions applicable to crimes of forgery, simulation, impersonation, and related offenses in

15

Colorado's Criminal Code).  Moreover, it is unclear why Lowery maintains this section would constitute an adjudicative fact.  While it is undisputable that the statute exists, applying it in this case as an interpretive aid is not appropriate, let alone undisputed.

¶ 36    As discussed above, interpreting a written document, such as the subject policy in the employee handbook, is, in the first instance, a question of law, not fact.  *GMAC*, 155 P.3d at 557.  A factual inquiry only arises if the tribunal finds an ambiguity in the document.  *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 912 (Colo. 1996).  In that scenario only, the tribunal may consider evidence outside of the document itself, to aid its interpretation.  *Reisig v. Resol. Tr. Corp.*, 806 P.2d 397, 400 (Colo. App. 1991).  The hearing officer properly found no ambiguity in the loyalty card policy, nor did Lowery argue such ambiguity exists.  So, section 18-5-101 provided no adjudicative facts, and the hearing officer properly refused to take judicial notice of it.  CRE 201(a), (b).

C.    Interpretation and Application of the Law

¶ 37    Lowery contends that the hearing officer erred as a matter of law in concluding that she was disqualified under section 8-73-108(5)(e)(XX) because that section did not apply.  Lowery

maintains that only subsection (5)(e)(VII) could possibly apply under the facts here. That section disqualifies a claimant, in part, for "[v]iolation of a statute or of a company rule which resulted or could have resulted in serious damage to the employer's property or interests." § 8-73-108(5)(e)(VII). We are not persuaded.

¶ 38 First, Lowery suggests that subsection (5)(e)(XX) irreconcilably conflicts with the more "specific" subsection (5)(e)(VII), and that the latter subsection therefore should have controlled the hearing officer's analysis. *See BP Am. Prod. Co. v. Patterson*, 185 P.3d 811, 813 (Colo. 2008). We do not consider this argument because Lowery provides no analysis supporting a conclusion that the two subsections irreconcilably conflict, and we perceive no such conflict. *See Vallagio at Inverness Residential Condo. Ass'n v. Metro. Homes, Inc.*, 2017 CO 69, ¶¶ 39-40.

¶ 39 Next, Lowery argues that subsection (5)(e)(XX) cannot apply because it concerns "job performance" and "other defined standards," and no witnesses at the hearing invoked those terms. Noting that the terms "policy" and "policies," however, appear in the hearing transcript many times, she argues that subsection (5)(e)(VII) is the only applicable disqualification section. According to her, the

17

hearing officer (and, subsequently, the Panel) erroneously applied subsection (5)(e)(XX), rather than properly invoking subsection (5)(e)(VII), "because they could not get around [the latter's] requirement that the violation of a company rule must result or could have resulted in serious damage to the employer's property or interests." And, as she points out, she netted a mere $5.00 in fuel points from customers' purchases.

¶ 40 The fact that the word "policy" is used multiple times during the hearing is a non sequitur. Neither subsection (5)(e)(XX) nor (5)(e)(VII) includes the word "policy." § 8-73-108(5)(e)(VII), (XX). To the extent Lowery implies that the term "policy" is more akin to the term "rule" in subsection (5)(e)(VII) than the term "standard" in subsection (5)(e)(XX), we do not consider this argument because it lacks meaningful analysis and legal support. *See People v. Wallin*, 167 P.3d 183, 187 (Colo. App. 2007) (declining to address perfunctory, conclusory arguments).

¶ 41 Finally, even if we examine the hearing officer's factual findings through the lens of subsection (5)(e)(VII), as Lowery urges, she fares no better. Though subsection (5)(e)(VII) requires evidence of substantial harm in some circumstances, it also requires

18

disqualification for "intentional falsification of expense accounts, inventories, or other records or reports *whether or not substantial harm or injury was incurred.*" § 8-73-108(5)(e)(VII) (emphasis added). As discussed above, the hearing officer's findings, supported by substantial evidence in the record, included: (1) that King Soopers forbids employees from accruing loyalty points earned from customers' purchases; (2) that Lowery acknowledged receiving a copy of this policy; (3) that Lowery did, in fact, record on her loyalty card account points from customers' purchases; and (4) that she acted intentionally in doing so. By recording on her own card account points belonging to others, Lowery intentionally falsified her loyalty points record and would therefore be disqualified from receiving unemployment benefits under subsection (5)(e)(VII).

## III. Disposition

¶ 42     We affirm the Panel's order.

CHIEF JUDGE ROMÁN and JUSTICE MARTINEZ concur.