2017 CO 69

**VALLAGIO AT INVERNESS RESIDENTIAL CONDOMINIUM ASSOCIATION, INC., Petitioner,**

**v.**

**METROPOLITAN HOMES, INC., a Colorado corporation; Metro Inverness, LLC, a Colorado limited liability company; Greg Krause, individually; and Peter Kudla, individually, Respondents.**

**Supreme Court Case No. 15SC508**

Supreme Court of Colorado.

June 5, 2017

Attorneys for Petitioner: Burg Simpson Eldredge Hersh Jardine P.C., Ronald M. Sandgrund, Scott F. Sullan, Mari K. Perczak, Leslie A. Tuft, Brian Matise, Nelson Boyle, Englewood, Colorado

Attorneys for Respondents: Palumbo Lawyers LLP, Marisa C. Ala, Mary Ritchie, Greenwood Village, Colorado

Attorneys for Amicus Curiae Build Our Homes Right: Orten Cavanagh & Holmes, LLC, Candyce D. Cavanagh, Denver, Colorado

Attorneys for Amici Curiae City and County of Denver, Colorado; Board of County Commissioners for Douglas County, Colorado; City of Aurora, Colorado; City of Northglenn, Colorado; Denver Metro Chamber of Commerce; Metro Denver Economic Development Corporation; Downtown Denver Partnership; Colorado BUILDS; Associated General Contractors of Colorado; Colorado Contractors Association, Inc.; Housing Colorado; Colorado Competitive Council; Colorado Mortgage Lenders Association; Colorado Bankers Association; Colorado Business Roundtable; NAIOP Colorado Chapter; Associated Landscape Contractors of Colorado; Colorado Association of Mechanical & Plumbing Contractors; Mechanical Contractors Association of Colorado; Mechanical Service Contractors Association of Colorado; National Certified Pipe Welding Bureau, Colorado Chapter; Colorado Association of Plumbing-Heating-Cooling Contractors; American Council of Engineering Companies of Colorado; American Subcontractors Association of Colorado; Rocky Mountain Chapter, National Electrical Contracting Association; Independent Electrical Contractors Rocky Mountain; D.R. Horton; Hyder Construction, Inc.; Palisade Partners, LLC; and Front Range Land and Development Co.: Polsinelli PC, Richard M. Murray, Amy K. Hansen, Ryan E. Warren, Denver, Colorado

Attorneys for Amicus Curiae Community Associations Institute: Benson, Kerrane, Storz & Nelson, P.C., Jeffrey P. Kerrane, Golden, Colorado

Attorneys for Amici Curiae National Association of Home Builders; Colorado Association of Home Builders; Home Builders Association of Metro Denver; Summit County Builders Association; Housing & Building Association of Northwestern Colorado; Home Builders Association of Northern Colorado d/b/a NOCO HBA; Housing & Building Association of Colorado Springs and Pikes Peak Region; Pueblo Association of Home Builders, Inc.; Grand County Builders Association; and NAIOP Colorado, the Commercial Real Estate Development Association: Bryan Cave LLP, Stephen D. Gurr, Denver, Colorado

JUSTICE GABRIEL delivered the Opinion of the Court.

¶1 This case principally requires us to determine whether the Colorado Common

Interest Ownership Act ("CCIOA"), §§ 38-33.3-101 to -402, C.R.S. (2016), permits a developer-declarant to retain a right of consent to certain proposed amendments to a common interest community's declaration. The petitioner, Vallagio at Inverness Residential Condominium Association, Inc. (the "Association"), seeks to recover damages for alleged construction defects in the Vallagio at Inverness residential development project (the "Project"), a common interest community organized under CCIOA. The Project's developer and declarant, respondent Metro Inverness, LLC (the "Declarant"), drafted and recorded the Project's original declaration, which set forth specific dispute resolution procedures for construction defect claims. Specifically, and as pertinent here, certain provisions of the original declaration (1) required that all construction defect claims be resolved through binding arbitration and (2) provided that the provisions governing such claims "shall not ever be amended" without the Declarant's written consent.

¶2 Shortly before the Association filed the present action, and without obtaining the Declarant's consent, the requisite number of the Project's unit owners voted to amend the declaration to delete the foregoing dispute resolution provisions. The Association then proceeded to file a complaint in district court, naming as defendants the Declarant and three related parties, respondents Metropolitan Homes, Inc., Greg Krause, and Peter Kudla.[1] The Declarant moved to compel arbitration, arguing that the attempted declaration amendment was ineffective absent its written consent and, thus, the Association was bound by the arbitration provision contained in the original declaration. The district court denied the Declarant's motion, reasoning in pertinent part that the consent-to-

amend provision violated and was therefore void under CCIOA. The Declarant brought an interlocutory appeal in the court of appeals, and a division of that court reversed the district court's denial of the motion to compel arbitration. Vallagio at Inverness Residential Condo. Ass'n v. Metro. Homes, Inc., 2015 COA 65, ¶¶ 1, 72, — P.3d —.

¶3 We granted certiorari and now affirm.[2] We conclude that the consent-to-amend provision contained in the Project's original declaration is consistent with CCIOA and is therefore valid and enforceable. We further conclude that because the unit owners did not obtain the Declarant's consent to remove the arbitration provision, the attempted removal was ineffective, and the declaration's arbitration agreement remains in force. Finally, we conclude that nothing in the Colorado Consumer Protection Act ("CCPA"), §§ 6-1-101 to -1121, C.R.S. (2016), precludes arbitration of the Association's CCPA claims.

## I. Facts and Procedural History

¶4 The Declarant drafted, and in 2007 recorded, the Project's original declaration.

¶5 Section 13.1 of the declaration established the general procedures for amending the declaration. As pertinent here, it allowed the unit owners to amend the declaration but required a vote or agreement of unit owners holding at least 67% of the votes in the Association to do so. In addition, until a certain point in time, the Declarant also had to consent to any proposed amendment. The parties do not appear to dispute that the Declarant's right of consent under Section 13.1 expired in 2012.

¶6 Section 16.6 of the declaration, in turn, established comprehensive dispute resolution

---

1. According to the Association's complaint, Metropolitan Homes is the Declarant's manager and the Project's general contractor, while Krause and Kudla were Declarant-appointed members of the Association's board of directors during the period of Declarant control.

2. We granted certiorari to review the following issues:
   1. Whether the court of appeals erred by holding as a matter of first impression that Colorado's Common Interest Ownership Act ("CCIOA") permits a developer–declar-

ant to reserve the power to veto unit owner votes to amend common interest community declarations.
   2. Whether the court of appeals erred in holding that Colorado's Consumer Protection Act ("CCPA") claims are subject to pre-dispute mandatory arbitration provisions where this Court previously held, "We leave open the question of whether CCPA claims might be deemed non-arbitrable," Ingold v. AIMCO/Bluffs, L.L.C. Apartments, 159 P.3d 116, 122 n.5 (Colo. 2007).

procedures for construction defect claims, including a requirement that all such claims be submitted to binding arbitration (the "arbitration provision"). Additionally, Section 16.6(h) (the "consent-to-amend provision") provided in pertinent part:

> The terms and provisions of this Section 16.6 inure to the benefit of Declarant, are enforceable by Declarant, and <u>shall not ever be amended without the written consent of Declarant</u> and without regard to whether Declarant owns any portion of the Real Estate at the time of such amendment.

(Emphasis added.)

¶7 The Declarant turned over control of the Association's board of directors to the Project's unit owners in 2010.

¶8 Thereafter, a construction defect dispute arose, and in December 2012 and January 2013, pursuant to the Construction Defect Action Reform Act ("CDARA"), §§ 13-20-801 to -808, C.R.S. (2016), the Association sent the Declarant a written notice and then a supplemental notice of its purported claims. The parties proceeded under CDARA's prelitigation notice and offer of settlement provision, see § 13-20-803.5, C.R.S. (2016), but they did not reach agreement.

¶9 Then, in September 2013, at least 67% of the Project's unit owners voted to amend the declaration to remove, among other provisions, Section 16.6 in its entirety. The unit owners did not seek or obtain the Declarant's consent to this amendment.

¶10 In December 2013, the Association filed the present action in district court, asserting a number of claims arising from alleged construction defects, including claims under the CCPA. The Association asserted these claims solely on its own behalf, based on its obligation to maintain and repair all common elements in the Project.

¶11 Relying on Section 16.6 of the declaration, the Declarant moved to compel arbitration, arguing that the arbitration clause in the declaration divested the district court of jurisdiction. Specifically, the Declarant contended that because the unit owners had not obtained its consent to amend the declaration as required by Section 16.6(h), the parties remained bound by Section 16.6's dispute resolution procedures, including mandatory arbitration.

¶12 The Association responded that (1) the declaration was validly amended because Section 16.6(h)'s consent-to-amend requirement violated—and was therefore void under—CCIOA and (2) even if the Association remained bound by the declaration's arbitration agreement, its claims under the CCPA were not arbitrable because the CCPA expressly provides for a "civil action," which the Association interpreted to mean a court proceeding.

¶13 In a written order, the district court denied the Declarant's motion to compel arbitration. The court concluded that the Declarant's consent was not required to remove the arbitration provision because, as pertinent here, the consent-to-amend requirement in Section 16.6(h) conflicted with several provisions of CCIOA and was therefore void and unenforceable. In light of this determination, the court declined to address the Association's argument that the CCPA claims were non-arbitrable.

¶14 The Declarant then filed an interlocutory appeal pursuant to section 13-22-228(1)(a), C.R.S. (2016). Vallagio, ¶ 11. As pertinent here, a unanimous division of the court of appeals reversed in part, concluding that the declaration required the Association to arbitrate its claims against the Declarant. Id. at ¶ 12. Specifically, the division perceived no conflict between CCIOA and Section 16.6(h)'s consent-to-amend requirement. Id. at ¶¶ 25 –47. Accordingly, the division concluded that the unit owners' attempt to remove Section 16.6 without obtaining the Declarant's consent was ineffective, and, as a result, the declaration still contained a valid and enforceable arbitration agreement. Id. at ¶ 47.[3] The division further concluded that the Association's claims under the CCPA were subject to arbitration because the right to a

---

3. The division, however, remanded the case to the district court for further proceedings to determine whether Metropolitan Homes, Krause, and Kudla had standing to compel arbitration under the declaration. Id. at ¶ 49. This ruling is not at issue here.

"civil action" under section 6-1-113, C.R.S. (2016), is waivable. Id. at ¶ 71.

¶15 The Association then sought, and we granted, certiorari.

## II. Standard of Review

¶16 We review questions of statutory interpretation de novo. Pulte Home Corp. v. Countryside Cmty. Ass'n, 2016 CO 64, ¶ 24, 382 P.3d 821, 826. In doing so, "we look to 'the entire statutory scheme to give consistent, harmonious, and sensible effect to all parts' and apply 'words and phrases according to their plain and ordinary meaning.'" Id. (quoting Denver Post Corp. v. Ritter, 255 P.3d 1083, 1089 (Colo. 2011)). When the statutory language is clear, we apply it as written and need not resort to other rules of statutory construction. See id.; Denver Post, 255 P.3d at 1089.

## III. Analysis

¶17 We begin by addressing whether the consent-to-amend provision is consistent with CCIOA. We then consider the Association's contention that its CCPA claims are non-arbitrable under the CCPA's express terms.

### A. CCIOA

¶18 The Association contends that the consent-to-amend provision is unenforceable under CCIOA because (1) it exceeds the 67% voting threshold established by section 38-33.3-217(1)(a)(I), C.R.S. (2016), for amending a declaration; (2) it is a device intended to evade the foregoing 67% limitation and thus is proscribed by section 38-33.3-104, C.R.S. (2016); and (3) in violation of section 38-33.3-302(2), C.R.S. (2016), it imposes limitations on the power of the Association to deal with the Declarant that are more restrictive than the limitations imposed on the power of the Association to deal with other persons. The Association also asserts, albeit in conclusory fashion, that several other CCIOA provisions require us to reverse the division's ruling. We address each argument in turn.

### 1. Section 38-33.3-217(1)(a)(I)

¶19 The Association contends that subject to certain exceptions not pertinent here, section 38-33.3-217(1)(a)(I) establishes the sole and exclusive procedure available for amending a declaration, namely, by the affirmative vote or agreement of greater than 50%—but not more than 67%—of the unit owners. The Association thus contends that because the declaration's consent-to-amend provision imposes an additional amendment requirement (i.e., the Declarant's consent), section 38-33.3-217(1)(a)(I) renders that provision void. We are not persuaded.

¶20 Section 38-33.3-217(1)(a)(I) provides, in pertinent part:

> [T]he declaration ... may be amended only by the affirmative vote or agreement of unit owners of units to which more than fifty percent of the votes in the association are allocated or any larger percentage, not to exceed sixty-seven percent, that the declaration specifies. Any provision in the declaration that purports to specify a percentage larger than sixty-seven percent is hereby declared void as contrary to public policy, and until amended, such provision shall be deemed to specify a percentage of sixty-seven percent.

(Emphasis added.)

¶21 By its own terms, section 38-33.3-217(1)(a)(I) voids only those declaration provisions that "specify a percentage larger than sixty-seven percent." (Emphasis added.) As the division noted, nothing in that section's plain language precludes a declaration from imposing additional (i.e., non-percentage based) requirements for amendments. See Vallagio, ¶ 37. To the contrary, other provisions of section 38-33.3-217 expressly contemplate such additional requirements.

¶22 For example, section 38-33.3-217(7)(d)(I)(C) applies in circumstances in which an association petitions the district court for an order amending the declaration. That section requires, among other things, that the petition contain a statement that the court may grant the petition and order the proposed amendment to the declaration unless "any declarant entitled by the declaration to vote on the proposed amendment"

files a written objection thereto. § 38-33.3-217(7)(d)(I)(C) (emphasis added). This section thus expressly envisions situations in which a declarant retains a right to object to a proposed amendment.

¶23 Similarly, section 38-33.3-217(1)(b)(I) details permissible notification procedures "[i]f the declaration requires first mortgagees to approve or consent to amendments, but does not set forth a procedure for registration or notification of first mortgagees." This provision also recognizes the possibility that a third party might retain the right to consent to proposed amendments.

¶24 Accordingly, interpreting section 38-33.3-217(1)(a)(I) to preclude a declarant's consent if a declaration's amendment procedures already require a 67% vote of the unit owners would require us to ignore both the section's plain text and other CCIOA provisions. This we may not do. See Denver Post, 255 P.3d at 1088–89.

¶25 We are not persuaded otherwise by the Association's invocation of CCIOA's legislative history and certain comments to the Uniform Common Interest Ownership Act (the "Uniform Act"). Legislative history cannot render the plain and unambiguous language of section 38-33.3-217(1)(a)(I) ambiguous. See Smith v. Exec. Custom Homes, Inc., 230 P.3d 1186, 1190 (Colo. 2010) ("The legislative history, however, cannot render the plain and unambiguous language of [a statute] ambiguous. When the meaning of a statute is clear based on a plain reading of the language, we do not consult legislative history.").[4]

¶26 Accordingly, we conclude that the plain language of section 38-33.3-217(1)(a)(I) does not bar the consent-to-amend provision at issue.

### 2. Section 38-33.3-104

¶27 The Association also contends that the consent-to-amend provision is void under section 38-33.3-104, which provides, among other things, "A declarant may not act under a power of attorney or use any other device to evade the limitations or prohibitions of this article or the declaration." For several reasons, we disagree.

¶28 First, the Association's argument appears to be premised on its view of section 38-33.3-217(1)(a)(I), which we have rejected. Specifically, because we disagree with the Association's premise that section 38-33.3-217(1)(a)(I) establishes an absolute 67% voting limitation and that no other conditions for amendments can be imposed, we cannot conclude that the consent-to-amend provision represents an illegal attempt to avoid the Association's presumed 67% limitation.

¶29 Second, we are unpersuaded by the Association's assertion that other jurisdictions that have adopted the Uniform Act disallow the type of consent provision at issue here. The Association relies exclusively on Boulder Oaks Community Association v. B & J Andrews Enterprises, LLC, 125 Nev. 397, 215 P.3d 27 (2009), to support this contention. Boulder Oaks, however, is inapplicable. There, the declarant had retained a right of consent to any material declaration amendment, as long as the declarant owned land subject to the declaration. Boulder Oaks, 215 P.3d at 33. The Nevada Supreme Court held that this consent provision was void because it created the "exact type of class voting" that Nevada's version of the Uniform Act expressly prohibited. Id. at 33–34. Specifically, the consent provision created a class of units simply because they were owned by the declarant. Id. Here, in contrast, class voting is not at issue.

¶30 Finally, it is not clear to us that the consent-to-amend provision contravenes any

---

4. Although the legislative history of section 38-33.3-217 is not pertinent to our understanding of that section, we note that the history cited by the Association addresses certain problems resulting from excessively high voting percentage requirements. The legislative history thus accords with section 38-33.3-217's plain meaning. Moreover, although we generally "accept the intent of the drafters of a uniform act as the General Assem-

bly's intent when it adopts a uniform act," Yacht Club II Homeowners Ass'n v. A.C. Excavating, 94 P.3d 1177, 1180 (Colo. App. 2003), aff'd, 114 P.3d 862 (Colo. 2005), we are not persuaded that comments to the Uniform Act's 2008 amendments are directly relevant to the meaning of CCIOA's provisions as they existed in 2007, which is the pertinent time period here.

of CCIOA's policies or purposes. To the contrary, in adopting CCIOA, the General Assembly "specifically endorse[d] and encourage[d] associations, unit owners, managers, declarants, and all other parties to disputes arising under this article to agree to make use of all available public or private resources for alternative dispute resolution." § 38-33.3-124(1)(a)(II), C.R.S. (2016). In addition, CCIOA permits a declaration to "specify situations in which disputes shall be resolved by binding arbitration under the uniform arbitration act ... or by another means of alternative dispute resolution under the 'Dispute Resolution Act' ...." § 38-33.3-124(3). Accordingly, like the division below, we "cannot say that the declarant consent requirement in this case 'evade[s] the limitations or prohibitions' of CCIOA, § 38-33.3-104." Vallagio, ¶ 42. Indeed, the consent-to-amend provision appears to be fully consistent with both CCIOA and Colorado's public policy favoring arbitration as a mechanism of alternative dispute resolution. See Radil v. Nat'l Union Fire Ins. Co., 233 P.3d 688, 692 (Colo. 2010).

¶31 For these reasons, we conclude that the consent-to-amend provision does not violate section 38-33.3-104.

### 3. Section 38-33.3-302(2)

¶32 The Association next contends that the consent-to-amend provision violates section 38-33.3-302(2). Again, we are unpersuaded.

¶33 Section 38-33.3-302(2) provides, "The declaration may not impose limitations on the power of the association to deal with the declarant that are more restrictive than the limitations imposed on the power of the association to deal with other persons." This section thus prohibits only restrictions that are "unique to the declarant." Triple Crown at Observatory Vill. Ass'n v. Vill. Homes of Colo., Inc., 2013 COA 150M, ¶ 40, 328 P.3d 275, 282.

¶34 Here, as the division recognized, the Association has no power to amend the declaration. Specifically, amending a declaration is not among an association's powers as enu-

merated in section 38-33.3-302(1), and no other CCIOA provisions enable the Association to amend the declaration in the circumstances presented in this case. See § 38-33.3-217(1)(a)(III)(C) (listing the provisions pursuant to which an association may amend the declaration). Furthermore, Section 13.1 of the declaration itself provides that the unit owners—not the Association—have the power to amend the declaration by a 67% vote. Because it is impossible to limit a power that has not been conferred, we agree with the division that the consent-to-amend provision does not violate section 38-33.3-302(2).

¶35 The Association devotes the remainder of its argument to attacking the validity of the arbitration provision—rather than the consent-to-amend provision—under section 38-33.3-302(2). For two reasons, we decline to address this claim.

¶36 First, to the extent that this claim was raised in the district court,[5] the Association does not appear to have made this argument on appeal before the division. See Vallagio, ¶ 16 ("[T]he parties do not dispute on appeal that the original declaration contained a valid arbitration agreement.... Rather, the parties dispute whether the arbitration provision was validly removed by the unit owners' amendment of the declaration."). Consistent with our recognition in Colorado Permanente Medical Group, P.C. v. Evans, 926 P.2d 1218, 1228 (Colo. 1996), that "[o]ur judicial system depends upon the orderly presentation and preservation of issues," we decline to consider the Association's argument here. See id. ("At the court of appeals level, the parties must identify the issues that are critical to the case and invite analysis and resolution of those issues."); see also Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C., 2012 CO 61, ¶ 18, 287 P.3d 842, 847 ("A basic principle of appellate jurisprudence is that arguments not advanced in the trial court and on appeal are generally deemed waived.").

¶37 Second, the claim that the declaration's arbitration provision is void under section 38-

---

5. Our review of the Association's district court briefing has revealed only a single, conclusory assertion that the arbitration provision is void because it applies solely to claims against the Declarant.

33.3-302(2) cannot be said to be fairly comprised within the Association's petition for certiorari. As pertinent here, we granted certiorari to address whether the division erred in holding that CCIOA "permits a developer–declarant to reserve the power to veto unit owner votes to amend common interest community declarations." Whether CCIOA also permits a declaration to prescribe certain dispute resolution procedures is a different question, and not one that we may consider here. See C.A.R. 53(a)(1) (providing that only those issues "set forth or fairly comprised" within the certiorari petition will be considered on review); Evans, 926 P.2d at 1229 ("We are charged with resolving the issues that are properly before us. [The petitioners' argument] was not presented for findings and rulings at the trial court level; it was not argued to the court of appeals and it was not framed in the grant of certiorari before this court. Although the issue is clearly an important one, we should not strain the confines of this case and reach out to decide it.").

¶38 Accordingly, we do not address the Association's apparent contention that the declaration's arbitration procedures are void under section 38-33.3-302(2).

### 4. Remaining Claims

¶39 We next reject the Association's conclusory assertions that reversal is warranted because (1) the consent-to-amend provision improperly allows the Declarant to control the Association beyond the time period permitted by section 38-33.3-303(5), C.R.S. (2016); (2) section 38-33.3-112, C.R.S. (2016), precludes enforcement of unconscionable contract clauses involving common interest communities; and (3) section 38-33.3-305(1)(b), C.R.S. (2016), permits an association, within a specified time, to terminate any contract entered into between the declarant and itself.

¶40 C.A.R. 28(a)(7) requires an appellant to set forth its "contentions and reasoning, with citations to the authorities and parts of the record on which the appellant relies."

The Association, however, offers no supporting argument or authority for the foregoing claims, and we decline to assume the mantle. See Farrell v. Bashor, 140 Colo. 408, 344 P.2d 692, 693 (1959) ("In the instant case, the points enumerated by [the appellant] are mere generalizations, vague and indefinite. We have repeatedly held that a general specification of points is insufficient and will not be considered upon review."); Barnett v. Elite Props. of Am., Inc., 252 P.3d 14, 19 (Colo. App. 2010) ("We will not consider a bald legal proposition presented without argument or development."). Accordingly, we do not address the Association's remaining CCIOA-related claims.

¶41 For these reasons, we conclude that the consent-to-amend provision is consistent with CCIOA and therefore enforceable. Because the unit owners did not obtain the Declarant's written consent to remove the declaration's arbitration provision, the attempted amendment was ineffective. Consequently, the Association remains bound by the arbitration agreement set forth in Section 16.6 of the declaration.[6]

### B. Arbitrability of CCPA Claims

¶42 Having established that the Association remains bound by the declaration's original arbitration provision, we turn to the question of whether the CCPA precludes an agreement to arbitrate CCPA claims against a declarant. We conclude that it does not.

¶43 The CCPA states that its provisions "shall be available in a civil action for any claim against any person who has engaged in or caused another to engage in any deceptive trade practice listed in this article." § 6-1-113(1) (emphasis added). Based on this right to bring a "civil action," the Association argues that its CCPA claims are not subject to the declaration's arbitration agreement. We are not persuaded.

¶44 In Triple Crown, ¶¶ 1–2, 328 P.3d at 276–77, a division of the court of appeals considered the precise question at issue here, namely, whether an association's claims un-

---

6. In reaching this conclusion, we emphasize that we are concerned here with a narrowly drafted consent-to-amend provision that pertains solely to the resolution of construction defect disputes.

We express no opinion as to the propriety of any other consent-to-amend provisions that may come before us.

der the CCPA could be made subject to a mandatory arbitration provision in a declaration. The division concluded first that the legislature's use of the phrase "civil action" in section 6-1-113(1) established a right to commence a judicial proceeding. Id. at ¶ 43, 328 P.3d at 283. In reaching this conclusion, the division recognized that although the CCPA does not define "civil action," this court "has defined the phrase as 'a proceeding on the part of one person, as actor, against another, for the infringement of some right of the first, before a court of justice, in the manner prescribed by the court or law.'" Id. (quoting Hernandez v. Downing, 154 P.3d 1068, 1070 (Colo. 2007)). The division proceeded, however, to reject the association's assertion that this right precluded mandatory arbitration. Id. at ¶¶ 44–45, 328 P.3d at 283. The division reasoned that because the CCPA does not include a non-waiver provision—unlike other statutes granting the right to a "civil action"—the right to a civil action provided by the CCPA does not invalidate the enforcement of a mandatory arbitration clause. Id. The division below was persuaded by and followed the same rationale. Vallagio, ¶¶ 70–71.

■ ¶45 We likewise are persuaded. The General Assembly could have elected to make the rights afforded by the CCPA non-waivable. It did not do so, however, and "[t]he absence of particular language is usually considered an indication of legislative intent, not a mere oversight." Triple Crown, ¶ 11, 328 P.3d at 278. We thus conclude that the right to a "civil action" under section 6-1-113 is waivable and that the declaration's arbitration provision effects such a waiver.

¶46 We are not persuaded otherwise by the Association's reliance on Lambdin v. District Court, 903 P.2d 1126 (Colo. 1995), and Ingold v. AIMCO/Bluffs, L.L.C. Apartments, 159 P.3d 116 (Colo. 2007), for the proposition that the statutory right to file a civil action may not be waived pre-dispute when, as here, public policy forbids such a waiver. Neither case established such a rule.

¶47 In Lambdin, 903 P.2d at 1127, we considered whether an employee's claims under the Colorado Wage Claim Act were subject to mandatory arbitration. We observed that a provision of that statute "voids any agreement that constitutes a waiver or modification of an employee's rights under the Wage Claim Act," which rights include instituting a civil action in court to recover wages. Id. at 1129. Recognizing that enforcement of an arbitration agreement contained in the employee's compensation agreement would effect a waiver of his right to a civil action, we concluded that the arbitration agreement was void under the Wage Claim Act. Id. at 1129–30.

¶48 Similarly, in Ingold, 159 P.3d at 122–23, we determined that the petitioners' claim under the Wrongful Withholding of Security Deposits Act was not subject to an arbitration provision in their lease. That Act provides for "legal proceedings" in a "court action" and deems void as against public policy any lease provision that purports to waive any provision of the Act that is intended to benefit a tenant. Id. at 123. Because the lease provision at issue purported to waive the right to a court action set forth in the Act, we concluded that that provision was void. Id.

¶49 Accordingly, our analyses in Lambdin and Ingold turned not on the public policy embodied in the respective statutes, but on the terms of the statutes' non-waiver provisions, which expressly voided the arbitration agreements at issue. As noted above, however, the CCPA contains no such provision. Accordingly, Lambdin and Ingold do not assist the Association here.

■ ¶50 Nor are we persuaded by the Association's conclusory assertion that CDARA precludes waiver of a plaintiff's CCPA claims. In its principal brief, the Association cites section 13-20-806(7)(a), C.R.S. (2016), and contends that that section "renders void as against public policy any 'express waiver of, or limitation on, the legal rights, remedies, or damages' provided by CDARA and the CCPA." The Association, however, omits from its quotation the provision's first two clauses, which explain that the waivers described therein are deemed void "[i]n order to preserve Colorado residential property owners' legal rights and remedies, in any civil action or arbitration proceeding...." Id. (emphasis added). Thus,

section 13-20-806(7)(a) precludes, within the context of a civil action or arbitration proceeding, the waiver or limitation of certain legal rights, remedies, or damages provided by the CCPA. It does not, however, preclude the arbitration of CCPA claims themselves. To the contrary, it expressly envisions the possibility of an arbitration proceeding involving CCPA claims. See id.

¶51 Accordingly, we conclude that the division properly determined that the Association's CCPA claims are subject to the declaration's arbitration agreement.

## IV. Conclusion

¶52 For these reasons, we affirm the judgment of the court of appeals and remand this case for further proceedings consistent with this opinion.

JUSTICE MÁRQUEZ dissents, and JUSTICE COATS joins in the dissent.

JUSTICE MÁRQUEZ, dissenting.

¶53 The majority holds that the consent-to-amend provision in Section 16.6(h) of the Declaration is consistent with the Colorado Common Interest Ownership Act ("CCIOA"), §§ 38-33.3-101 to -402, C.R.S. (2016), and is therefore enforceable. Maj. op. ¶ 41. I respectfully disagree. Although CCIOA contemplates the possibility of declarant consent, the consent-to-amend provision in Section 16.6(h) evades the limitations and prohibitions of section 38-33.3-217 of CCIOA by effectively allowing the Declarant to grant itself permanent veto power over a supermajority of unit owners and thus unilaterally control the Association's ability to amend the Declaration, even after the Declarant's control period ends. Because such a result is inconsistent with the legislative intent in section 38-33.3-217 to require no more than sixty-seven percent of unit owners' votes to amend a declaration, I respectfully dissent.

¶54 I begin by reviewing the applicable provisions of CCIOA and the Declaration before us. I then discuss why the majority's analysis of section 38-33.3-217 is unpersuasive and has troubling implications.

## I.

¶55 Section 38-33.3-104 states that the provisions of CCIOA "may not be varied by agreement," and the rights conferred by CCIOA "may not be waived." In addition, "[a] declarant may not act under a power of attorney or use any other device to evade the limitations or prohibitions of this article or the declaration." § 38-33.3-104. CCIOA, including section 38-33.3-104, was based on the Uniform Common Interest Ownership Act of 1982 ("the 1982 Uniform Act"). DeJean v. Grosz, 2015 COA 74, ¶ 11, —— P.3d ——. The substantively-identical provision of the 1982 Uniform Act includes a comment emphasizing that this provision is intended to prevent declarants from controlling the votes of the unit owners:

> In order to prevent declarants from evading these requirements by obtaining powers of attorney from all unit owners, or in some other fashion controlling the votes of the unit owners, this Section forbids the use by a declarant of any device to evade the limitation or prohibition of the Act or of the declaration.

1982 Uniform Act, § 1-103 cmt. 2 (emphasis added). See generally Silverview at Overlook, LLC v. Overlook at Mt. Crested Butte Ltd. Liab. Co., 97 P.3d 252, 256 (Colo. App. 2004) (analyzing comments to the 1982 Uniform Act).

¶56 In my view, the consent-to-amend provision in Section 16.6(h) is such a prohibited "device" to evade the limitations and prohibitions of CCIOA, specifically, section 38-33.3-217.

¶57 Section 38-33.3-217 sets an upper threshold on the percentage of unit owners' votes required to amend a declaration:

> [T]he declaration ... may be amended only by the affirmative vote or agreement of unit owners of units to which more than fifty percent of the votes in the association are allocated or any larger percentage, not to exceed sixty-seven percent, that the declaration specifies. Any provision in the declaration that purports to specify a percentage larger than sixty-seven percent is hereby declared void as contrary to public policy.

(Emphases added.) Stated differently, section 38-33.3-217 prohibits any provision in a declaration that prevents a supermajority (or more) of unit owners from voting to amend the declaration.

¶58 Section 13.1 of the Declaration at issue here states that its provisions "may be amended ... by vote or agreement of Owners of Units holding at least 67% of the votes in the Association." This provision also requires the consent of the Declarant, provided that "Declarant's right to consent under this Section 13.1" expires after the last unit is sold to an owner other than the Declarant. Here, the Declarant sold the last unit to a non-declarant owner in 2012.

¶59 Section 16.6 of the Declaration sets forth detailed provisions requiring binding arbitration of all construction defect claims. It requires the Association to have written consent of a supermajority of eligible unit owners before initiating a judicial proceeding, to submit to negotiation and mediation and, if negotiation and mediation fail, to submit to final and binding arbitration. Section 16.6 also prohibits recovery of attorneys' fees and other costs, and limits damages to actual damages.

¶60 Most importantly here, Section 16.6(h) (the "consent-to-amend provision") states that the entirety of Section 16.6 "shall not ever be amended without the written consent of Declarant ... without regard to whether Declarant owns any portion of the Real Estate at the time of such amendment." The question here is whether the consent-to-amend provision in Section 16.6(h) can permanently override Section 13.1, which allows for amendment of the Declaration with at least sixty-seven percent of unit owners' votes. In my view, Section 16.6(h) violates section 38-33.3-217 of CCIOA because the consent-to-amend provision allows the Declarant to reserve for itself a perpetual veto power that prevents a supermajority of unit owners from amending the Declaration.

## II.

¶61 The majority reasons that section 38-33.3-217(1)(a)(I) concerns only the percentage of unit owners' votes and does not preclude additional, non-percentage-based requirements for amendment of a declaration. Maj. op. ¶ 21 (citing Vallagio at Inverness Residential Condo. Ass'n v. Metro. Homes, Inc., 2015 COA 65, ¶ 37, —— P.3d ——). But the majority's narrow focus on the word "percentages" ignores the reality that Section 16.6(h) effectively gives the Declarant permanent veto power over the unit owners, despite supermajority support among unit owners for amending the Declaration. Such control over unit owners contravenes the legislative intent of section 38-33.3-217.

¶62 Section 38-33.3-217 bars declarants from preventing the amendment of a declaration by capping the upper vote threshold to amend at sixty-seven percent of unit owners. But under Section 16.6(h) of this Declaration, the Declarant can thwart the vote of the supermajority of unit owners by withholding its consent. Indeed, even if one hundred percent of unit owners voted to amend a provision of Section 16.6, Section 16.6(h) renders such a vote ineffective without the Declarant's consent.

¶63 Such a result essentially negates the purpose of section 38-33.3-217 because it evades any upper limit on the threshold to amend. In my view, the consent-to-amend provision in Section 16.6(h) is precisely the sort of "device" fashioned to "[control] the votes of the unit owners" that section 38-33.3-217 was designed to forbid. See 1982 Uniform Act, § 1-103 cmt. 2. The consent-to-amend provision consequently runs afoul of section 38-33.3-104 by varying (here, effectively nullifying) unit owners' rights to amend the declaration conferred by section 38-33.3-217 of CCIOA.

¶64 The majority points to section 38-33.3-217(7)(I)(C) and section 38-33.3-217(1)(b)(I) as evidence that section 38-33.3-217 contemplates the consent of the declarant or third parties. Maj. op. ¶¶ 21–23. However, the question here is not whether a declarant may include a right to consent to proposed amendments in the declaration. Rather, the question is whether a declarant may lawfully permanently override a supermajority vote by unit owners to remove a consent-to-amend provision. Sections 38-33.3-217(7)(I)(C) and

38-33.3-217(1)(b)(I) do not speak to that question and are therefore inapposite.

## III.

¶65 The majority's holding today has troubling implications. Although the consent-to-amend provision at issue here applies only to bar changes to provisions governing construction defect claims, maj. op. ¶ 41, the logic of the majority's opinion is not so limited. The majority suggests its holding is limited to the facts of this case, see maj. op. ¶ 41 n.6, but its logic will permit declarants to control homeowners' associations' affairs into perpetuity simply by drafting self-serving provisions and then including a consent-to-amend provision that allows the declarant to demand consent to the amendment of any provision in the declaration. In short, the majority's holding effectively allows declarants to end-run the provisions of section 38-33.3-217.

¶66 Because the consent-to-amend provision of Section 16.6(h) evades the limitations of section 38-33.3-217(1)(a)(I) and thus violates section 38-33.3-104, I respectfully dissent.

I am authorized to state that JUSTICE COATS joins in this dissent.