JUSTICE GABRIEL, concurring in part and dissenting in part.
¶31 I fully agree with the majority's conclusion that nonprobationary teachers who are placed on unpaid leave have no vested property interest in salary and benefits and that therefore, plaintiff Lisa M. Johnson was not deprived of a state property interest in this case. I cannot, however, agree with the majority's construction of section 22-63-202(2)(c.5), C.R.S. (2017).
¶32 After unsuccessfully seeking to dismiss Johnson, a nonprobationary teacher with over twenty years of experience, defendant School District No. 1 (the "District") ultimately placed her on indefinite leave without pay, notwithstanding the fact that she was not "displaced as a result of drop in enrollment; turnaround; phase-out; reduction in program; or reduction in building, including closure, consolidation, or reconstitution" pursuant to section 22-63-202 (2)(c.5)(VII).
¶33 This case now asks us to decide whether a nonprobationary teacher like Johnson, who was assigned to a school upon the mutual consent of the school and herself, can be displaced (as opposed to terminated) based on the school's determination that she was no longer meeting the school's goals, or whether she may only be displaced for the reasons set forth in section 22-63-202 (2)(c.5)(VII). The majority concludes that section 22-63-202(2)(c.5) applies to all nonprobationary teachers who are not employed in mutual consent placements. See maj. op. ¶¶ 2, 12, 21. Thus, in the majority's view, a school may place a teacher like Johnson on indefinite leave without pay whenever the school withdraws its consent to placement, as opposed to only in the circumstances set forth in section 22-63-202 (2)(c.5)(VII). See id. Because I believe that the majority misconstrues section 22-63-202(2)(c.5), I disagree with these conclusions.
¶34 Accordingly, I respectfully concur in part and dissent in part from the majority's opinion.
I. Factual Background
¶35 The majority lays out most of the pertinent facts, and I need not repeat those facts here. I, however, highlight certain of the facts leading up to the events at issue because I believe that those facts are necessary for a complete understanding of the parties' motives and actions.
¶36 Johnson was a nonprobationary teacher with over twenty years' experience. For most of her career, she had received good evaluations. In 2008, however, an assistant principal at her school recommended that she be dismissed, and the District accepted that recommendation.
¶37 Johnson challenged this decision under the Teacher Employment, Compensation, and Dismissal Act of 1990, §§ 22-63-101 to - 403, C.R.S. (2017) ("TECDA"), and an administrative law judge ("ALJ") concluded that no just cause existed for Johnson's dismissal. In particular, the ALJ found the assistant principal's conclusions to be unsupported and that those conclusions relied on questionable data. The ALJ further found that the assistant principal's testimony contained a number of inconsistencies.
¶38 As a result of the ALJ's ruling, at the end of the 2008-09 school year, Johnson returned to the classroom, although she was told that her placement was for one year.
¶39 Johnson remained in this placement through the 2010-11 school year, and in 2011-12, she taught at a different school. Again, prior to her placement at the new school, she was told that the placement was for one year.
¶40 Thereafter, in July 2012, the District told Johnson that she was being placed on indefinite leave, effective September 1, 2012, if she did not obtain a mutual consent position by August 26, 2012. When Johnson did not obtain such a position, she was placed on indefinite unpaid leave.
¶41 Johnson subsequently sued the District in state court, and the District removed *720 the case to federal court. After the federal district court dismissed Johnson's claims, she appealed to the Tenth Circuit, and that court certified the questions now before us.
II. Analysis
¶42 I begin by addressing the applicable standard of review and rules of statutory construction. I then discuss section 22-63-202(2)(c.5) and explain why I believe that teacher displacements under that section are limited to the circumstances set forth in section 22-63-202 (2)(c.5)(VII).
A. Standard of Review and Rules of Statutory Construction
¶43 We review questions of statutory interpretation de novo. Vallagio at Inverness Residential Condo. Ass'n v. Metro. Homes, Inc., 2017 CO 69, ¶ 16, 395 P.3d 788, 792. In doing so, we look to the entire statutory scheme in order to give consistent, harmonious, and sensible effect to all of its parts, and we apply words and phrases in accordance with their plain and ordinary meanings. Id. When the statutory language is clear, we apply it as written and need not resort to other rules of statutory construction. Id.
¶44 When, however, the statutory language is ambiguous, we may examine the legislative intent, the circumstances surrounding the statute's adoption, and the possible consequences of various interpretations to determine the proper construction of that statute. Coffman v. Williamson, 2015 CO 35, ¶ 23, 348 P.3d 929, 936. A statute is ambiguous if it is reasonably susceptible of multiple interpretations. Id.
B. Section 22-63-202(2)(c.5)
¶45 Section 22-63-202(2)(c.5) concerns teacher employment contracts.
¶46 At first blush, section 22-63-202(2)(c.5)(I) appears to give school principals substantial discretion over teacher placements. That subsection provides:
The general assembly finds that, for the fair evaluation of a principal based on the demonstrated effectiveness of his or her teachers, the principal needs the ability to select teachers who have demonstrated effectiveness and have demonstrated qualifications and teaching experience that support the instructional practices of his or her school. Therefore, each employment contract executed pursuant to this section shall contain a provision stating that a teacher may be assigned to a particular school only with the consent of the hiring principal and with input from at least two teachers employed at the school and chosen by the faculty of teachers at the school to represent them in the hiring process, and after a review of the teacher's demonstrated effectiveness and qualifications, which review demonstrates that the teacher's qualifications and teaching experience support the instructional practices of his or her school.
¶47 Notably, however, this subsection speaks in terms of a principal's authority over the ability to "select" and "assign[ ]" teachers during the hiring process. See id. It says nothing about displacing teachers or withdrawing consent after a teacher is placed. See id.
¶48 Section 22-63-202 (2)(c.5)(III) then provides procedures concerning teachers displaced for the reasons set forth in section 22-63-202 (2)(c.5)(VII). Section 22-63-202 (2)(c.5)(III) provides, in pertinent part:
(A) Any active nonprobationary teacher who was deemed effective during the prior school year and has not secured a mutual consent placement shall be a member of a priority hiring pool, which priority hiring pool shall ensure the nonprobationary teacher a first opportunity to interview for a reasonable number of available positions for which he or she is qualified in the school district.
(B) When a determination is made that a nonprobationary teacher's services are no longer required for the reasons set forth in subparagraph (VII) of this paragraph (c.5), the nonprobationary teacher shall be notified of his or her removal from the school.... Upon notice to the nonprobationary teacher, the school district shall immediately provide the nonprobationary teacher with a list of all vacant positions for which he or she is qualified, as well as a list of vacancies in any area identified by *721 the school district to be an area of critical need. An application for a vacancy shall be made to the principal of a listed school, with a copy of the application provided by the nonprobationary teacher to the school district. When a principal recommends appointment of a nonprobationary teacher applicant to a vacant position, the nonprobationary teacher shall be transferred to that position.
¶49 Section 22-63-202(2)(c.5)(IV) immediately follows subsection (2)(c.5)(III), and it concerns those displaced teachers who are unable to secure a mutual consent placement within a certain period of time. That section provides, as pertinent here:
If a nonprobationary teacher is unable to secure a mutual consent assignment at a school of the school district after twelve months or two hiring cycles, whichever period is longer, the school district shall place the teacher on unpaid leave until such time as the teacher is able to secure an assignment.
¶50 Lastly, section 22-63-202 (2)(c.5)(VII) provides, "This paragraph (c.5) shall apply to any teacher who is displaced as a result of drop in enrollment; turnaround; phase-out; reduction in program; or reduction in building, including closure, consolidation, or reconstitution."
¶51 In my view, this statutory scheme is susceptible of at least two reasonable interpretations.
¶52 First, as Johnson asserts, the statute can be read so that subsection (2)(c.5)(I) applies solely to initial placements and hiring decisions, and thus, a nonprobationary teacher can be displaced solely for the reasons set forth in subsection (2)(c.5)(VII).
¶53 Second, as the District asserts, the statute can be read to give the principal authority at all times and for any reason to withdraw consent to the teacher's placement. If, however, the teacher has remained effective, then subsection (2)(c.5)(III) provides the displaced teacher with certain additional rights and protections.
¶54 Because both of these constructions are reasonable, I believe that the statute is ambiguous. Accordingly, I turn to the statute's legislative history and the settled rules of statutory construction set forth above to discern the legislature's intent.
¶55 The legislative history of section 22-63-202(2)(c.5) reveals that subsection (2)(c.5)(VII) was added to clarify the circumstances in which a teacher can be placed on indefinite leave without pay. Specifically, as introduced, the bill proposing what is now section 22-63-202(2)(c.5) contained broad language (1) allowing teachers to be assigned to a particular school only with the consent of the receiving school and (2) providing that if the teacher was unable to secure an assignment after two hiring cycles, then the school district would place the teacher on unpaid leave until the teacher could secure an assignment. See S.B. 10-191, 67th Gen. Assemb., 2d Reg. Sess. (Colo. 2010) (introduced Apr. 12, 2010). Later amendments to the bill, however, and most notably the addition of subsection (2)(c.5)(VII), limited the circumstances in which a teacher could be placed on indefinite leave to those in which the displacement was due to conditions at the school, such as a drop in enrollment or a building closure.
¶56 The legislative history further reflects that in adding subsection (2)(c.5)(VII), the legislature intended to pattern the Colorado statute after the collective bargaining agreement that had been adopted in Chicago. See S.B. 10-191 Amendment Summary. The mutual consent provisions in the Chicago collective bargaining agreement applied only to teachers displaced by general school-based reductions, as, for example, the closure of a program or a drop in enrollment. See Agreement between the Board of Education of the City of Chicago and the Chicago Teachers Union, Local No. 1 (July 1, 2007-June 30, 2012), at App. H, at 224, https://perma.cc/UP6N-LRN7. Consistent with those provisions, subsection (2)(c.5)(VII) provided for similar school-based displacements.
¶57 Lastly, the legislative history of the statute makes clear that subsection (2)(c.5)(I)'s mutual consent provision was concerned with the hiring of teachers and not their displacement. For example, Senator Michael Johnston, who co-sponsored the bill, testified to the importance of having teachers *722 "placed into positions by mutual consent, which is to say that we think teachers ought to be able to have a choice in the assignment they take." Hearing on S.B. 191 before the S. Educ. Comm., 67th Gen. Assemb., 2d Reg. Sess., at 8 (Apr. 21, 2010) (statement of Sen. Michael Johnston) (emphasis added). Likewise, Denver Superintendent Tom Boasberg testified that he strongly supported "this bill's insistence upon mutual consent in hiring of teachers" and noted that "the voluntary hiring principle is absolutely fundamental." Hearing on S.B. 191 Before the H. Educ. Comm., 67th Gen. Assemb., 2d Reg Sess., at 77 (May 6, 2010) (statement of Superintendent Tom Boasberg) (emphasis added).
¶58 Accordingly, the legislative history of section 22-63-202(2)(c.5) tends to support Johnson's view that subsection (2)(c.5)(I) applies solely to initial placements and hiring decisions and thus, a nonprobationary teacher can be displaced solely for the reasons set forth in subsection (2)(c.5)(VII).
¶59 In addition to the foregoing, in my view, Johnson's interpretation properly harmonizes all of the provisions of section 22-63-202(2)(c.5), whereas the District's interpretation, which the majority here adopts, is inconsistent with subsection (2)(c.5)(VII) and renders that subsection superfluous.
¶60 As noted above, subsection (2)(c.5)(VII) states, "This paragraph (c.5) [i.e., the entirety of section 22-63-202(2)(c.5) ] shall apply to any teacher who is displaced as a result of drop in enrollment; turnaround; phase-out; reduction in program; or reduction in building, including closure, consolidation, or reconstitution." (Emphasis added.) The District's interpretation, however, would read section 22-63-202(2)(c.5) to apply to any teacher displaced for any reason. In my view, such a reading is inconsistent with subsection (2)(c.5)(VII), and neither the District nor the majority explains how its interpretation squares with that subsection.
¶61 Moreover, if the District's interpretation were correct, then subsection (2)(c.5)(VII) would be superfluous. Specifically, if a teacher could be placed on indefinite unpaid leave at any time and for any reason, then subsection (2)(c.5)(VII) would be wholly unnecessary. We, however, strive to avoid constructions that will render statutory terms superfluous. See Kinder Morgan CO2 Co. v. Montezuma Cty. Bd. of Comm'rs, 2017 CO 72, ¶ 24, 396 P.3d 657, 664.
¶62 Finally, if the District's interpretation were correct, then section 22-63-202(2)(c.5) would allow a district to do an end run around the extensive termination-for-cause provisions set forth in sections 22-63-301 and - 302, C.R.S. (2017). Specifically, rather than complying with those termination-for-cause provisions, a district could simply withdraw consent for a teacher's placement and place that teacher on indefinite leave without pay, which, as a practical matter, would effectively terminate the teacher's employment. I do not believe that the legislature adopted substantial and detailed termination-for-cause protections for teachers, on the one hand, only to provide so ready a means for evading them, on the other.
¶63 In reaching this conclusion, I am unpersuaded by the majority's view that interpreting the statute as Johnson does (an interpretation with which I agree) would render the reference in subsection (2)(c.5)(III)(B) to subsection (2)(c.5)(VII) superfluous, which we may not do. See maj. op. ¶ 20. The majority reasons that if subsection (2)(c.5)(VII) applies to all of section (2)(c.5), then referring to subsection (2)(c.5)(VII) in subsection (2)(c.5)(III)(B) is unnecessary. See id. I, however, agree with Johnson's view that although the reference to subsection (2)(c.5)(VII) may be redundant, it is not superfluous. Rather, that reference simply reaffirms the kinds of displacements to which section (2)(c.5) is directed. Indeed, the very next sentence of subsection (2)(c.5)(III)(B) confirms this interpretation. That sentence begins, "In making decisions pursuant to this paragraph (c.5)...." (Emphasis added.) The sentence thus refers to section (2)(c.5) as a whole and therefore supports Johnson's view that subsection (2)(c.5)(VII) applies to the entirety of section (2)(c.5).
¶64 In contrast, the majority's interpretation would lead to potentially illogical or absurd results. Under the majority's apparent view, only teachers displaced for the reasons *723 set forth in subsection (2)(c.5)(VII), and not teachers displaced for some other reason, would receive notice of their removal from a school. I, however, perceive no reason why only certain displaced teachers would receive notice of their displacement, and the majority offers none. See Frazier v. People, 90 P.3d 807, 811 (Colo. 2004) (noting that we will not follow a statutory interpretation leading to an illogical or absurd result).
¶65 I likewise am unpersuaded by the majority's view that Johnson's interpretation of section (2)(c.5) leads to illogical or absurd results. See maj. op. ¶ 19. The majority opines that under Johnson's interpretation, a school would not have to accept a nonprobationary teacher who had been displaced as a result of a drop in enrollment but would have to accept a teacher who was displaced for cause and that such a result would be absurd. See id. I, however, respectfully disagree with the majority's premise. Contrary to the majority's view, as noted above, sections 22-63-301 and - 302 authorize terminations for cause, subject to the detailed procedures set forth in those provisions. Accordingly, a school would not have to accept a teacher for whom cause to terminate exists. Rather, the district could employ the statutory procedures for terminating the teacher for cause. Not only is such a result neither illogical nor absurd, but also it harmonizes all of the pertinent provisions of TECDA: if cause exists to terminate a teacher, then the district can do so, subject to the provisions of sections 22-63-301 and - 302 ; short of grounds to terminate for cause, however, a nonprobationary teacher who is employed in a school pursuant to a mutual consent placement may be displaced only for the reasons set forth in section 22-63-202 (2)(c.5)(VII).
III. Conclusion
¶66 For these reasons, I agree with the majority's conclusion that Johnson was not deprived of a state property interest in this case. Unlike the majority, however, I believe that under section 22-63-202(2)(c.5), a nonprobationary teacher like Johnson, who was assigned to a school upon the mutual consent of the school and herself, may only be displaced for the reasons set forth in section 22-63-202 (2)(c.5)(VII).
¶67 Accordingly, I respectfully concur in part and dissent in part from the majority's opinion.
I am authorized to state that JUSTICE HOOD and JUSTICE HART join in this concurrence in part and dissent in part.