1
 2025 CO 9 Board of Governors of the Colorado State University, Petitioner v. Renee Alderman, Respondent No. 23SC565
Supreme Court of Colorado, En Banc
February 24, 2025
 
          
 Certiorari to the Colorado Court of Appeals Court of Appeals
 Case No. 22CA1140.
 
 
          
 Attorneys for Petitioner: Philip J. Weiser, Attorney General
 Michael D. McMaster, Assistant Solicitor General Jennifer H.
 Hunt, Senior Assistant Attorney General Kathleen L. Spalding,
 Senior Assistant Attorney General Erica Weston, Special
 Assistant Attorney General Denver, Colorado
 
 
          
 Attorneys for Respondent: Kishinevsky & Raykin, LLC Igor
 Raykin Michael J. Nolt Aurora, Colorado
 
 
          
 JUSTICE BERKENKOTTER delivered the Opinion of the Court, in
 which CHIEF JUSTICE MARQUEZ, JUSTICE BOATRIGHT, JUSTICE
 GABRIEL, JUSTICE HART, and JUSTICE SAMOUR joined. JUSTICE
 HOOD did not participate.
 
 
          
 OPINION
 
 
          
 BERKENKOTTER, JUSTICE
 
 2
 
          ¶1
 In the Spring of 2020, after Colorado State University
 ("CSU") temporarily transitioned from in-person to
 online learning due to the COVID-19 pandemic, Renee Alderman
 ("Alderman") and Tyler Stokes ("Stokes")
 (collectively, "the students") each filed putative
 class action lawsuits against the university seeking to
 recover part of the tuition and fees that they and all
 similarly situated students paid to CSU for that semester.
 They alleged, in a joint complaint filed after their cases
 were consolidated, that CSU breached its contract (1) to
 provide in-person learning for which the students had paid
 tuition and (2) to make available the facilities for which
 the students had paid fees. They asserted two claims for
 breach of contract: one pertaining to their tuition payments
 and the other pertaining to their payment of fees. They also
 brought two claims, in the alternative, for the equitable
 remedy of unjust enrichment. Following briefing by the
 parties, the district court concluded that CSU's enabling
 statute explicitly granted the university the authority to
 suspend operations in the event of "the prevalence of
 fatal diseases, or other unforeseen calamity," §
 23-30-111, C.R.S. (2024), and so it dismissed the
 students' breach of contract claims.
 
 
          ¶2
 The court subsequently dismissed the students' only
 remaining claims, those for unjust enrichment, after it
 determined that (1) the contract between CSU and the students
 was legally enforceable (albeit not in the manner the
 students
 
 3
 
 sought) and (2) the students could not recover under a theory
 of unjust enrichment because their unjust enrichment claims
 and the contract between CSU and the students covered the
 same subject matter-the provision of educational services.
 
 
          ¶3
 Only Alderman appealed, and a split division of the court of
 appeals reversed the district court's decision dismissing
 her unjust enrichment claims. Alderman v. Bd. of
 Governors of Colo. State Univ., 2023 COA 61, ¶ 33,
 536 P.3d 831, 838. The division majority concluded that
 CSU's contract obligations "were obviated when it
 invoked [section 23-30-111], leaving [Alderman] with no
 contract rights to enforce." Id. at ¶ 29,
 536 P.3d at 837.
 
 
          ¶4
 We granted certiorari to review the division's opinion
 and now conclude that it erred as a matter of law in holding
 that the contract between CSU and Alderman was unenforceable.
 A contract is not rendered unenforceable merely because it
 does not provide all the services and protections to which a
 party claims it is entitled. Here, section 23-30-111 did not
 make the contract unenforceable. Rather, the
 statutory provision was simply deemed to be part of the
 contract. And because the statute explicitly authorized CSU
 to temporarily suspend operations, the district court
 dismissed Alderman's breach of contract claims. The fact
 that Alderman was unable to state a claim for breach
 of contract did not render the contract itself
 unenforceable.
 
 4
 
          ¶5
 Because Alderman's unjust enrichment claims fail as a
 matter of law, we reverse the part of the division's
 judgment that reinstated Alderman's unjust enrichment
 claims and remand the case with directions to reinstate the
 judgment of the district court in favor of CSU.
 
 
          I.
 Facts and Procedural History
 
 
          ¶6
 CSU is a state institution of higher education established in
 the Colorado Constitution and by state statute. Colo. Const.
 art. VIII, § 5; § 23-1-101, C.R.S. (2024);
 §§ 23-31-101 to -122, C.R.S. (2024). It is a
 land-grant university that celebrated its sesquicentennial in
 2020 in honor of the 150-year anniversary of its founding.
 The university advertised "superior instruction with a
 small professor-to-student ratio" of 1-to-16 and
 "state-of-the-art technology for an ever-changing global
 economy." Incoming freshmen were required to live on
 campus for their first year at CSU.
 
 
          ¶7
 Because of the COVID-19 pandemic, CSU announced on March 19,
 2020, that it would be moving all classes on its Fort Collins
 campus to remote learning beginning on March 23, 2020. The
 university then suspended in-person operations, directed
 students who could move out of on-campus housing to do so,
 closed campus buildings, restricted access to most campus
 facilities and services, and transitioned to remote learning
 for six weeks.
 
 5
 
          ¶8
 Alderman was a full-time student at CSU during the Spring
 2020 semester when she filed a class action complaint on
 behalf of all similarly situated students seeking a refund of
 tuition and fees that she contended CSU wrongfully retained.
 Her case was ultimately consolidated with a similar class
 action filed by fellow CSU student Stokes. Their consolidated
 complaint asserted two claims for breach of contract. The
 first asserted that CSU had a contractual obligation to
 provide live, in-person classroom instruction in a physical
 classroom in exchange for the students' tuition payments.
 The second claimed that CSU had a contractual obligation to
 provide access to on-campus athletic events, on-campus
 computers and technology, and other in-person events in
 exchange for the students' payment of mandatory student
 fees.
 
 
          ¶9
 The consolidated complaint also included two claims of unjust
 enrichment. These claims were pled in the alternative to the
 two breach of contract claims "to the extent it is
 determined a contract does not exist or otherwise
 apply." The students asserted in their complaint that
 CSU unjustly retained their tuition and mandatory student
 fees even though it failed to provide a full semester of
 inperson instruction, services, and events.
 
 
          ¶10
 The students emphasized in their consolidated complaint that
 they contracted for an in-person education. CSU, they noted,
 also offered fully online distance-learning programs that are
 priced differently than the in-person,
 
 6
 
 hands-on education offered in Fort Collins. The students
 stressed that they chose to pay more for an in-person
 education because of the numerous and distinct benefits,
 which they claimed included:
 
 
 • face to face interaction with professors, mentors, and
 peers;
 
 
 • access to facilities such as computer labs, study
 rooms, laboratories, libraries, etc.;
 
 
 • student governance and student unions;
 
 
 • extracurricular activities, groups, intramurals, etc.;
 
 
 • student art, cultures, and other activities;
 
 
 • exposure to community members of diverse backgrounds,
 cultures, and schools of thought;
 
 
 • social development and independence;
 
 
 • hands-on learning and experimentation; and
 
 
 • networking and mentorship opportunities.
 
 
          ¶11
 As a remedy, the students sought to recover pro rata refunds
 of the tuition, fees, and other costs that they and all
 similarly situated students had paid for the services that
 were suspended during the six weeks when CSU canceled
 in-person classes, closed most campus buildings, and required
 all students who could to leave the campus.
 
 
          ¶12
 In response, CSU filed a motion to dismiss the consolidated
 complaint arguing, inter alia, that the students failed to
 state a claim under C.R.C.P. 12(b)(5). CSU argued that it was
 specifically authorized by statute to temporarily suspend
 
 7
 
 operations in the face of a pandemic and that the statutory
 term was, by operation of law, incorporated into any contract
 between the students and the university. Keelan v. Van
 Waters &Rogers, Inc., 820 P.2d 1145, 1148 (Colo.App.
 1991), aff'd, 840 P.2d 1070 (Colo. 1992). This
 meant, it asserted, the students' breach of contract
 claims must fail because section 23-30-111 expressly provides
 that CSU's board of governors may at any time
 "temporarily suspend a university in case of fire, the
 prevalence of fatal diseases, or other unforeseen
 calamity." CSU emphasized that there could be no breach
 of contract because the statute explicitly permits temporary
 suspensions like the one that occurred during the Spring 2020
 semester. ¶13 The district court dismissed both breach
 of contract claims asserted in the consolidated complaint. It
 did so after concluding that CSU's enabling statute
 specifically grants the university the authority to suspend
 operations in the event of "the prevalence of fatal
 diseases, or other unforeseen calamity." §
 23-30-111. And, because "[s]tatutory law which pertains
 to the terms of a contract is considered part of that
 contract," Keelan, 820 P.2d at 1148, the court
 held that CSU's authority to temporarily close the school
 was a term of the contract. Therefore, the court concluded
 that "any contractual bargain made between [the
 students] and CSU allowed CSU to close campus and in-person
 learning" in the face of a pandemic, and "CSU's
 actions in doing so cannot be considered a breach."
 
 8
 
          ¶14
 Several months later, CSU filed a motion for judgment on the
 pleadings, asking the district court to enter judgment on the
 students' claims for unjust enrichment. CSU claimed that
 the parties agreed that a contract existed between the
 students and the university and, thus, the students were
 barred from asserting unjust enrichment claims. After all,
 "a party cannot recover for unjust enrichment by
 asserting a quasi-contract when an express contract covers
 the same subject matter because the express contract
 precludes any implied-in-law contract." Interbank
 Invs., LLC v. Eagle River Water &Sanitation Dist.,
 77 P.3d 814, 816 (Colo.App. 2003). CSU acknowledged the two
 exceptions to this rule: if the express contract fails or is
 rescinded, or if the unjust enrichment claim covers matters
 that are outside of or arose after the contract. Pulte
 Home Corp. v. Countryside Cmty. Ass'n, 2016 CO 64,
 ¶ 64, 382 P.3d 821, 833. It argued, however, that
 neither of those circumstances applies here.
 
 
          ¶15
 In CSU's view, (1) it was undisputed that there was at
 least an implied-in-fact contract, foreclosing the first
 exception; and (2) all four claims concerned the provision of
 educational services and requested the same remedy. Based on
 this, CSU maintained, there was no real difference between
 the two breach of contract claims and the two unjust
 enrichment claims, and consequently the students could not
 meet either of the Pulte Home Corp. exceptions.
 Accordingly, CSU requested the consolidated complaint be
 dismissed in its entirety.
 
 9
 
          ¶16
 The students opposed the motion, arguing that a party can
 recover on a quasi-contract theory when that party "will
 have no right under an enforceable contract."
 Interbank, 77 P.3d at 816 (quoting Backus v.
 Apishapa Land &Cattle Co., 615 P.2d 42, 44
 (Colo.App. 1980)). Even with section 23-30-111 incorporated
 into the contract, they asserted, it would remain
 "completely silent on any obligations to pay under such
 events, let alone prescribe [that CSU] may keep tuition and
 fees in full in such an event."
 
 
          ¶17
 And the students offered a different interpretation of
 Pulte Home Corp.'s unjust enrichment exception
 that "[a] party generally cannot recover for unjust
 enrichment . . . where there is an express contract
 addressing the subject of the alleged obligation to
 pay." ¶ 64, 382 P.3d at 833. CSU's
 interpretation incorrectly placed emphasis on the word
 "subject," the students said, instead positing that
 the key language was "alleged obligation to pay."
 Thus, they argued that Pulte Home Corp. did not
 apply because the contract was silent as to CSU's
 obligation to repay tuition or fees in the event of a
 temporary campus closure. As a result, the students
 maintained, they should be allowed to develop their unjust
 enrichment claims.
 
 
          ¶18
 In the students' view, a party seeking to recover under
 an unjust enrichment theory must only show that "(1) the
 defendant received a benefit (2) at the plaintiff's
 expense (3) under circumstances that would make it unjust for
 the defendant to retain the benefit without commensurate
 compensation."
 
 10
 
 Lewis v. Lewis, 189 P.3d 1134, 1141 (Colo. 2008). An
 unjust enrichment claim, they urged, is "designed to
 undo the benefit to one party that comes at the unfair
 detriment of another." Id. The students posited
 that because they and all similarly situated students paid
 CSU tuition and fees for a full in-person semester and
 because the in-person semester was cut short, CSU would be
 unjustly enriched if it was not compelled to refund the
 students accordingly.
 
 
          ¶19
 Unpersuaded, the district court granted CSU's motion,
 concluding that the students' unjust enrichment claims do
 not fall within either of the Pulte Home Corp.
 exceptions. To begin, the court concluded that the undisputed
 evidence of an implied-in-fact contract covering the same
 subject matter meant the unjust enrichment claims could not
 proceed. Allowing such claims, the court explained, would
 "impermissibly allow for and greatly expand the basis
 for unjust enrichment claims." The unjust enrichment
 claims, the court observed, "cannot proceed as a mere
 recasting of the breach of contract claim when they cover the
 same subject matter."
 
 
          ¶20
 And, while an implied-in-fact contract between the students
 and CSU may be silent as to any obligation to issue refunds
 or repayments, the district court observed, it "ha[d]
 not found any support for the idea that an unjust enrichment
 claim can serve as a contract gap-filler, or may be asserted
 where a contract
 
 11
 
 covering the same subject matter omits a specific term that
 the parties did not include or contemplate."
 
 
          ¶21
 Finally, the district court held that the implied-in-fact
 contract had not been rescinded or failed, and that failing
 to plausibly plead a breach of contract claim does not
 entitle the students to assert unjust enrichment claims.
 Accordingly, the district court granted CSU's motion for
 judgment on the pleadings.
 
 
          ¶22
 Alderman-without Stokes-subsequently appealed both orders. A
 division of the court of appeals upheld the dismissal of the
 breach of contract claims, concluding that the authority
 statutorily granted to CSU to temporarily suspend operations
 in the event of a pandemic like COVID-19 precluded Alderman
 from stating claims for breach of contract against the
 university. Alderman, ¶ 20, 536 P.3d at 836.
 
 
          ¶23
 Turning to the unjust enrichment claims, the division
 disagreed with the district court, instead concluding that
 "the contract obligations of CSU were obviated when it
 invoked the statute, leaving [Alderman] with no contract
 rights to enforce" because "the invocation of
 [section 23-30-111] has made her contract claims
 unenforceable." Id. at ¶¶ 29, 32, 536
 P.3d at 837-38.
 
 
          ¶24
 In reaching this conclusion, the division analogized Alderman
 to the real estate broker in Backus. Id. at
 ¶ 32, 536 P.3d at 837. In Backus, a real estate
 broker licensed in Colorado entered into a listing agreement
 with a property owner to sell
 
 12
 
 its real property. 615 P.2d at 43. The broker also entered
 into a separate agreement with Backus, a real estate broker
 licensed in Texas, to cooperate in seeking a buyer for the
 property and to share in any commission due under the listing
 agreement. Id. After Backus helped the Colorado
 broker find a buyer for the property, the property owner
 breached the listing agreement by withdrawing the property
 from sale. Id. When the property owner refused to
 pay the fee due under its listing agreement with the Colorado
 broker, Backus, the Texas broker, sued the property owner,
 asserting claims based on (1) his purported rights under the
 listing agreement, (2) an assignment of rights he received
 from the Colorado broker, and (3) unjust enrichment.
 Id. The district court granted the property
 owner's motion for summary judgment as to all three
 claims, reasoning that Backus was precluded under Colorado
 law from entering into a contract for the sale of Colorado
 property because he was not licensed as a real estate broker
 in Colorado. Id.
 
 
          ¶25
 A division of the court of appeals affirmed in part and
 reversed in part. Id. at 43-44. It reasoned that
 Backus could not pursue a claim directly against the property
 owner because he was not a party to the listing agreement.
 Id. at 43. In fact, Colorado law barred such
 contracts. Id. But the division permitted the
 assignment and unjust enrichment claims to proceed,
 concluding that if Backus's assignment claim failed, he
 would have no rights under an enforceable contract.
 Id. at 44.
 
 13
 
          ¶26
 In the present case, the division majority below saw
 Alderman's situation much like Backus's: Alderman
 would have no right to enforce her claims for breach of the
 implied-in-fact contract in light of section 23-30-111.
 Alderman, ¶ 32, 536 P.3d at 837-38. Thus, the
 division reasoned that her unjust enrichment claim could
 proceed. Id., 536 P.3d at 838.
 
 
          ¶27
 Judge Tow dissented as to this part of the division's
 opinion. Id. at ¶ 36, 536 P.3d at 838 (Tow, J.,
 concurring in part and dissenting in part). He concluded
 that, "[b]ecause the contract between Alderman and CSU
 was legally enforceable (albeit not in the manner Alderman
 sought), was not abrogated or rescinded, and related to the
 same subject matter as the allegations underpinning
 Alderman's unjust enrichment claim, she cannot pursue a
 quasi-contractual claim such as unjust enrichment."
 Id. at ¶ 42, 536 P.3d at 839. Specifically,
 Judge Tow concluded that, because the parties agreed that
 they entered into an implied-in-fact contract for
 the provision of educational services, additionally seeking
 to impose an implied-in-law contract governing the
 exact same services for the purposes of Alderman's unjust
 enrichment claim was something "she simply cannot
 do." Id. at ¶ 37, 536 P.3d at 838. In
 support of his analysis, Judge Tow relied on
 Interbank, which held that "a party cannot
 recover for unjust enrichment by asserting a quasicontract
 when an express contract covers the same subject matter
 because the
 
 14
 
 express contract precludes any implied-in-law contract."
 Id. (alteration omitted) (quoting
 Interbank, 77 P.3d at 816).
 
 
          ¶28
 In Judge Tow's view, the majority misapplied
 Backus. Id. at ¶ 38, 536 P.3d at 838.
 The case, he observed, "does not stand for the
 proposition that if a party has a contract but
 cannot recover under it (because the other party's
 actions did not breach that contract), the party may
 alternatively pursue an unjust enrichment claim."
 Id. at ¶ 40, 536 P.3d at 839.
 "Instead," he noted, "Backus holds
 merely that where a party may not be able to
 establish the existence of an enforceable contract at all,
 that party may recover for unjust enrichment."
 Id. (emphasis added). In his view, "a contract
 does not 'fail' merely because it does not provide
 all the services and protections to which one of the
 contracting parties claims entitlement." Id. at
 ¶ 41, 536 P.3d at 839.
 
 
          ¶29
 CSU petitioned this court for certiorari review. We granted
 the petition to determine whether an unjust enrichment claim
 can be properly asserted when it mirrors a contract that (1)
 covers the same subject matter and (2) remains legally
 enforceable.[1] We now hold that claims for breach of
 contract and unjust
 
 15
 
 enrichment are mutually exclusive under these circumstances.
 The result is that Alderman's claims against CSU for
 unjust enrichment fail as a matter of law.
 
 
          II.
 Analysis
 
 
          ¶30
 Understanding the nature of this dispute requires us to
 describe the relationship between overlapping claims for
 breach of contract and unjust enrichment. We start by
 outlining the applicable standards of review before moving on
 to the relevant legal principles. We then use these as a
 guide to examine the viability of Alderman's unjust
 enrichment claims.
 
 
          A.
 Standard of Review
 
 
          ¶31
 Rulings on a motion for judgment on the pleadings are
 reviewed de novo. Melat, Pressman & Higbie, L.L.P. v.
 Hannon Law Firm, L.L.C., 2012 CO 61, ¶ 17, 287 P.3d
 842, 847. Judgment on the pleadings is appropriate if, from
 the pleadings, the moving party is entitled to judgment as a
 matter of law. City & Cnty. of Denver v. Qwest
 Corp., 18 P.3d 748, 754 (Colo. 2001).
 
 
          ¶32
 An unjust enrichment claim is an equitable cause of action.
 City of Arvada ex rel. Arvada Police Dep't v. Denver
 Health & Hosp. Auth., 2017 CO 97, ¶ 37, 403
 P.3d 609, 616. While equity rulings generally lie within the
 discretion of the trial court, appellate courts review de
 novo whether the trial court correctly understood the
 appropriate test for unjust enrichment. Lewis, 189
 P.3d at 1141.
 
 16
 
          ¶33
 Finally, we review questions of statutory interpretation de
 novo. Pulte Home Corp., ¶ 24, 382 P.3d at 826.
 We give effect to words and phrases according to their plain
 and ordinary meaning. Denver Post Corp. v. Ritter,
 255 P.3d 1083, 1089 (Colo. 2011). If the statutory language
 is clear, we apply it as written and need not resort to other
 rules of statutory construction. Vallagio at Inverness
 Residential Condo. Ass'n v. Metro. Homes, Inc., 2017
 CO 69, ¶ 16, 395 P.3d 788, 792.
 
 
          B.
 Relevant Legal Authority
 
 
          ¶34
 A plaintiff suing for breach of contract bears the burden of
 proving the following elements by a preponderance of the
 evidence: (1) the existence of a contract; (2) the
 plaintiff's performance of the contract or justification
 for nonperformance; (3) the defendant's failure to
 perform the contract; and (4) the plaintiff's damages as
 a result of the defendant's failure to perform the
 contract. Univ. of Denver v. Doe, 2024 CO 27, ¶
 46, 547 P.3d 1129, 1139. These elements apply to the
 enforcement of an express contract as well as to an
 implied-in-fact contract. Tuttle v. ANR Freight Sys.,
 Inc., 797 P.2d 825, 829 (Colo.App. 1990) ("There is
 no difference in legal effect between express and implied in
 fact contracts."). We have previously articulated the
 difference between a contract implied-in-fact and an express
 contract as follows:
 
 
 [A] contract implied in fact is based on the conduct of the
 parties to the agreement and it is the conduct itself which
 establishes the agreement. There is little fundamental
 difference between an express contract and a contract implied
 in fact. An express contract is
 
 17
 
 evidenced by the parties' written or oral words. A
 contract implied in fact arises from the parties' conduct
 which evidences a mutual intention to enter into a contract.
 In both cases, a contract is created by the meeting of the
 minds to contract with each other.
 
 
 Agritrack, Inc. v. DeJohn Housemoving, Inc., 25 P.3d
 1187, 1192 (Colo. 2001) (alteration in original).
 
 
          ¶35
 Unjust enrichment, in contrast, is a form of quasi-contract
 or contract implied-in-law that does not depend on a promise
 or privity between the parties. DCB Constr. Co. v. Cent.
 City Dev. Co., 965 P.2d 115, 119 (Colo. 1998). The test
 for recovery under an unjust enrichment theory requires a
 plaintiff to show that (1) at the plaintiff's expense (2)
 the defendant received a benefit (3) under circumstances that
 would make it unjust for the defendant to retain the benefit
 without paying. Id. at 119-20; accord Robinson
 v. Colo. State Lottery Div., 179 P.3d 998, 1007 (Colo.
 2008).
 
 
          ¶36
 When a party asserts claims for both breach of contract and
 unjust enrichment, further analysis may be required in the
 face of a motion to dismiss. This is because our
 jurisprudence holds that breach of contract and unjust
 enrichment claims involving the same subject matter are
 mutually exclusive. Thus, a party may not assert a claim for
 unjust enrichment if a valid contract covers the same subject
 matter. Pulte Home Corp., ¶ 64, 382 P.3d at 833
 (holding that a party generally cannot recover for unjust
 enrichment when an express contract
 
 18
 
 addresses the subject of the alleged obligation to pay). This
 is true even if the plaintiff is unable to recover under the
 contract. See Interbank, 77 P.3d at 818-19.
 
 
          ¶37
 Colorado appellate courts have recognized only two exceptions
 to this rule. A party may still recover for unjust enrichment
 when (1) the express contract fails or is rescinded or (2)
 the claim covers matters that are outside of or arose after
 the contract. Pulte Home Corp., ¶ 64, 382 P.3d
 at 833.
 
 
          C.
 Application
 
 
          ¶38
 Turning to the question before us, we hold that Alderman
 cannot properly state claims for unjust enrichment against
 CSU because her valid, enforceable contract with the
 university covers the same subject matter as those claims.
 
 
          ¶39
 There is no dispute that an implied-in-fact contract existed
 between CSU and Alderman. Alderman, ¶ 9, 536
 P.3d at 834. She paid tuition and fees, and in exchange, CSU
 provided educational services. This comports with the general
 proposition that the relationship between students and
 universities is contractual in nature. CenCor, Inc. v.
 Tolman, 868 P.2d 396, 398 (Colo. 1994).
 
 
          ¶40
 The division concluded that "the invocation of a
 Colorado statute has made [Alderman's] contract claims
 unenforceable." Alderman, ¶ 32, 536 P.3d
 at 837-38. Critically, however, a contract does not fail
 merely because it does not provide all the services and
 protections to which a party claims they are entitled.
 Rather, a contract fails only when it becomes legally
 unenforceable. Failing to make this
 
 19
 
 distinction is where the division majority erred. It
 conflated the failure of Alderman's breach of contract
 claim with the failure of the contract
 itself.
 
 
          ¶41
 The statutory provision in play here, section 23-30-111,
 granted CSU the authority to suspend university operations in
 the event of "the prevalence of fatal diseases, or other
 unforeseen calamity." This authority was, by operation
 of law, incorporated into the parties' contract, meaning
 that the contract explicitly allowed the university to
 temporarily suspend operations. This is why Alderman could
 not state a claim for breach of contract and why the district
 court dismissed her claims. But Alderman's inability to
 prove that the university breached the contract by
 temporarily suspending operations does not render the
 contract itself void or unenforceable. CSU and Alderman
 retained all other contractual rights contained in their
 agreement. See CenCor, Inc., 868 P.2d at 399.
 
 
          ¶42
 The division also erred in comparing Alderman's claims to
 those of the Texas real estate broker in Backus.
 Alderman, ¶ 32, 536 P.3d at 837-38.
 Backus stands for the proposition that a party may
 be able to recover for unjust enrichment when that party is
 unable to establish the existence of an enforceable contract.
 615 P.2d at 44. It does not hold that a plaintiff may pursue
 an unjust enrichment claim when that plaintiff's breach
 of contract claim fails because the defendant did not breach
 the contract. Backus, accordingly, does not support
 the division majority's analysis.
 
 20
 
          ¶43
 Finally, Alderman contends that she should be able to assert
 claims for unjust enrichment because her claims ultimately
 seek a remedy-a demand for a pro-rata refund of tuition and
 fees-that is not covered by her contract with CSU. We
 disagree. Alderman's argument is essentially that unjust
 enrichment should serve as a gap-filler provision to provide
 a remedy when a contract is silent about a desired term. She
 cites no authority in support of this proposition and
 essentially conceded during oral argument that she is asking
 the court to expand the reach of this court's unjust
 enrichment jurisprudence. She offers no principled limit to
 this expansion, which in our view would effectively
 obliterate the difference between breach of contract and
 unjust enrichment claims. This, of course, is something we
 simply cannot do.
 
 
          III.
 Conclusion
 
 
          ¶44
 For these reasons, we hold that a party cannot properly state
 a claim for unjust enrichment when a legally enforceable
 contract exists that covers the same subject matter and that
 contract has not been abrogated or rescinded. Because
 Alderman's unjust enrichment claims fail as a matter of
 law, we reverse the portion of the division's judgment
 reinstating Alderman's unjust enrichment claims and
 remand the case with directions to reinstate the district
 court's judgment in favor of CSU.
 
 
 ---------
 
 
 Notes:
 
 
 [1] Specifically, we granted certiorari to
 review the following issue:
 
 
 1. Whether a student can assert a claim for unjust
 enrichment based on CSU's campus closure where the
 relationship between CSU and its students is governed by a
 contract that permits CSU to close campus in the presence of
 a fatal disease.
 
 
 ---------